**In the Matter of Angel A. RIVERA, Marilyn Ramirez Santiago, Debtors.**

**Bankruptcy No. 92–01726 SEK.**

United States Bankruptcy Court, D. Puerto Rico.

Sept. 3, 1992.

Juan Castañer, Bayamon, P.R., for debtors.

Iraida I. Gonzalez, Caparra Heights Sta., P.R., for creditor, Ford Motor Credit.

## OPINION AND ORDER

SARA E. de JESUS, Bankruptcy Judge.

Ford Motor Credit Company has objected to the confirmation of Debtors' Plan dated August 21, 1992.[1] For the reasons stated in this opinion we grant the objection and deny confirmation of the August 21, 1992 Plan.

Debtors own a 1989 LTL 9000 platform truck manufactured by Ford Motor Company. It is undisputed that this vehicle is encumbered by a registered conditional sales contract in favor of Ford Motor Credit Company (FMCC). Debtors purchased the vehicle with money loaned by FMCC. They agreed to repay the principal of $94,-473.00 plus an annual interest of 14.53% in 60 almost equal monthly installments to FMCC. Debtors defaulted.

1. See Rule 3020(b)(1), (2) of the Federal Rules on Bankruptcy Procedure.

FMCC filed a request for lift of stay in this case. It claimed the stay should be lifted because Debtors were not current in their account with FMCC, they were not providing FMCC with adequate protection while using the vehicle, the truck was not needed for Debtors' reorganization, and Debtors appeared to be using the Bankruptcy Code to evade payment to this loan while using the financed truck for their own benefit.

During the combined preliminary and final hearing, we denied the lift of stay because a proposed August 21st plan contemplates a cramdown proposing payment of 100% of the value of FMCC's collateral. Specifically, the plan calls for the Trustee to pay $50,000.00, or the value of FMCC's collateral, plus 12% annual interest, ahead of all other claims, from the monthly installments which Debtors will pay to the Trustee. We scheduled an evidentiary hearing to consider FMCC's objections to confirmation and Debtors' request for a "cramdown", ordering the parties to file a pretrial.[2]

The pretrial contains the following undisputed facts:

1. "The parties stipulate the value of the collateral to be $50,000.00."

2. "The parties stipulate the admissibility in evidence of the following documents:

    a) Conditional Sales Contract.

    b) Appraisal by Centrocamiones dated May 28, 1992, stating the value of the truck to be $50,000.00."

The credible testimony received during the evidentiary hearing shows:[3]

1. If FMCC were to refinance $50,000.00 of the purchase price on September 1, 1992, for a 1989 platform truck, model 9000 LTL manufactured by Ford Motor Company for 24 months, it would charge $11,250.00 for interest at a rate equivalent to 20.30% A.P.R.

2. If FMCC were to refinance $50,000.00 of the purchase price on September 1, 1992, for a 1989 platform truck, model 9000 LTL manufactured by Ford Motor Company for 60 months, it would charge $28,125.00 for interest at a rate equivalent to 19.18% A.P.R.

3. The amount of interest to be charged is established by FMCC taking into consideration factors such as, the risk of refinancing the loan, the year, model, make of the car, and the interest rates being charged by the competition.

During the hearing, the parties also agreed the truck was necessary for Debtor's reorganization as Mr. Rivera was engaged in the business of hauling cargo and this was his only truck.

The issues are:

1. Can the August 21st plan proffered by Debtors be confirmed as provided in Section 1325(a)(5)(B) of the U.S. Bankruptcy Code, or does it fail to provide present value of the collateral held by FMCC?

2. Can confirmation of the plan be denied because it fails to provide for payment, as an administrative expense, of depreciation at $1,387.50 per month for the 12 months Debtors have utilized the truck without making any payments to FMCC?[4]

■ Section 1325(a)(5)(B)(i–ii) allows the Court to confirm a plan over the objection of a secured creditor subject to a cramdown if "(i) the plan provides the holder of such claim retain the lien securing such claim; and (ii) *the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.*"[5] (our emphasis) What occurs is that a debtor often proposes to pay that "value of collateral" through

---

**2.** "Section 1325(a)(5)(B) [of the U.S. Bankruptcy Code] ... is sometimes referred to as a 'cramdown' provision because a secured creditor is forced to accept secured status under the plan only to the extent of the value of the collateral at the time." *U.S. v. Arnold,* 878 F.2d 925, 928 (6th Cir.1989).

**3.** Ms. Wanda Ocasio, an officer of FMCC in charge of credit was the only person called to the stand.

**4.** In view of our decision to deny confirmation, we do not need to resolve this second issue.

**5.** 11 U.S.C. Section 1325(5)(B)(i–ii).

the plan in equal monthly installments disbursed by the trustee over a given period. Thus, the value of the collateral is not paid in one lump sum to the creditor upon confirmation of the plan. When this occurs, the Courts generally assess interest on the allowed secured claim to insure the secured creditor receives present value as of the effective date of the plan through the deferred payments in compliance with the cited Code Section. The interest or discount rate is assessed in a cramdown when payment is deferred in an attempt to avoid the dilution of the value of the allowed secured claim caused by the delay in payment and to compensate for the use of the creditor's money.[6]

To determine whether a plan grants this present value through a proposed interest on the deferred payment, a debtor should show that, "in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a Chapter 13 plan ... propose[s] to pay interest on the face amount of the allowed secured claim at an appropriate discount rate over the course of the payment extension period."[7] It is a mathematical calculation wherein "... the deferred payments [are capitalized] by converting the deferred payments proposed to be disbursed under the chapter 13 plan into an equivalent capital sum under the effective date of the plan."[8]

The issue then becomes what is the proper interest or discount rate which will in fact result in giving present value to the allowed secured claim to be paid in installments by the trustee under a confirmed plan?

■ In this particular case, Debtors claim the 12% interest on FMCC's allowed secured claim to be paid ahead of all other claims proposed in their August 21st plan is an appropriate discount rate which grants present value to FMCC's allowed secured claim. No evidence other than this

bald statement of Debtor's Counsel was received during the hearing.

FMCC on the other hand states the appropriate discount in this case is the interest rate which FMCC charges as testified by the only witness. Whether the $50,000.00 are repaid within 24 months or 60 months, the proper interest rate is 20.30% or 19.18% A.P.R. and not the 12% annual interest offered by Debtors.

■ Although the courts must determine the discount or interest rate on a case by case basis, an appropriate rate is one which approximates the cost of funds in the creditor's business borrowings. "To determine the costs of funds to creditors, and thereby the discount rate to be applied under section 1325(a)(5)(B)(ii), courts have usually looked to commercial credit market rates prevailing at the time of confirmation."[9] Hence, the courts treat the deferred payments of the value of the collateral as a new, albeit coerced loan, apply the commercial credit market interest rates, thereby "... providing the holder of the allowed secured credit not only with the cost of funds it would lend but also with the costs of a new loan transaction, which would not be incurred, and the profit that would be earned in that transaction."[10]

The only party who presented any evidence of a commercial credit market interest rate on a forced new loan was FMCC through the testimony of the witness. While it is true the evidence received pertained to the interest rate FMCC would charge on the specific refinancing contemplated by the cramdown, the fact remains this evidence was not impugned by the Debtors. Debtors made no attempts to produce evidence to sustain the discount rate they propounded in their August 21st plan.

WHEREFORE, limited to the facts of this case, the appropriate discount rate needed to provide present value for

**6.** See *Arnold* at 928.

**7.** 5 *Collier On Bankruptcy,* Section 1325.06[4][b][iii][B] (15 ed.).

**8.** *Id.*

**9.** 5 *Collier On Bankruptcy,* Section 1325.06[4][b][iii][B] (15th ed.).

**10.** *Id.*

FMCC's allowed secured claim is either 20.-30% or 19.18% A.P.R. Unless an amended plan is filed within 20 days in accordance with this decision, this case is dismissed for undue delay in obtaining the confirmation of a plan which is harmful to creditors as per 11 U.S.C. Section 1307(c)(1).

The Clerk will notify this Order and follow up.