**In re Inkuk CHANG d/b/a Sheridan Florist and Kyung Chang, Debtors.**

**Bankruptcy No. 95 B 09171.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 3, 1995.

Louise Daley, Zalutsky & Pinski, Chicago, IL, for debtors.

Howard Bernstein, Howard Hoffman & Associates, Chicago, IL, for Peterson Bank.

### MEMORANDUM OPINION ON PETERSON BANK'S MOTION TO MODIFY STAY

JACK B. SCHMETTERER, Bankruptcy Judge.

This Memorandum Opinion follows a hearing held on Motion of Peterson Bank to modify the automatic stay under Section 362 of the Bankruptcy Code, 11 U.S.C. § 362. The Motion seeks leave to proceed with sale of Debtors' residence pursuant to a pre-peti-

tion Judgment for Foreclosure entered in an Illinois state court. The grounds asserted are two: (1) that Debtors have no equity in the property and do not need it for effective reorganization; and (2) that 11 U.S.C. § 1322(b)(2) prevents Debtors from modifying the mortgage note that matured pre-bankruptcy. For reasons set forth below, the Motion was by separate order conditionally denied. The Court hereby makes and enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On October 14, 1989, Debtors were approved for a loan with Peterson Bank and executed an adjustable rate promissory note in the amount of $180,000.00, bearing an initial interest at the rate of 11.0% annum. The monthly payments of principal and interest were $1,857.94, commencing December 1, 1989, with a balloon payment due on November 1, 1994. This loan was secured by a mortgage on Debtors' residence located at 9216 Merrill Avenue in Morton Grove, Illinois.

In 1994, S.D. Trading, Inc. ("S.D. Trading") filed suit in the Circuit Court of Cook County, Illinois, Case number 94 CH 4692, joining multiple defendants, including Debtors and Peterson Bank, seeking to foreclose on its prior judgment in the sum of approximately $75,000.00.

Debtor Inkuk Chang filed his first petition under Chapter 13 of the Bankruptcy Code on July 8, 1994, in Case number 94 B 13699. S.D. Trading filed an objection to the Plan in that case based upon Debtor's failure to list all his creditors. The objection was sustained, and Debtor's Case number 94 B 13699 was dismissed on October 19, 1994.

Back in the state court case, 94 CH 4692, Peterson Bank filed its countercomplaint to foreclose mortgage. It sought to have a Judgment of Foreclosure entered, but then received notice of a new automatic stay pursuant to Debtor's second Chapter 13 case filed on December 29, 1994, Case number 94 B 25539. On February 7, 1995, Peterson Bank's motion to modify the automatic stay was granted in that bankruptcy case, and the Bank proceeded to judgment in state court

on its countercomplaint for foreclosure. Bankruptcy case No. 94 B 25539 was dismissed on Trustee's motion.

On March 3, 1995, Debtors filed their third Chapter 13 case, No. 95 B 09171, pending presently, and a new automatic stay issued under 11 U.S.C. § 362. Peterson Bank filed its present motion to modify the automatic stay so that the judicial sale of Debtors' residence could proceed. To date, no judicial sale has been held in the state court proceeding. Therefore, Debtors still retain rights in the property under Illinois law and also under the Bankruptcy Code. 11 U.S.C. § 1322(c)(1).

Peterson Bank contends that the total of all secured liens on Debtors' residence exceeds their equity in that property, that the residence has a fair market value of approximately $220,000.00 and the Bank's mortgage plus other secured liens total in excess of $350,000.00. Peterson Bank's appraisal of the property in question dated May 29, 1995, lists the fair market value at $210,000.00. The debt due it by Debtors is about $185,000.00. While neither side offered evidence of the property value at the hearing, Debtors conceded their lack of equity. Nonetheless, Debtors clearly need their present home as a basis for their economic reorganization and rehabilitation.

Debtors assert that their Plan cures the default due to the Bank in payments pursuant to 11 U.S.C. § 1322(c). Peterson Bank argues that Debtors have no right to cure, but was permitted by the Court to accept the sum of $8,140.00 tendered from Debtors without prejudice to the Bank's Motion.

Debtors' plan, as amended, will provide for payment of the outstanding loan balance of about $185,000.00 due Peterson Bank plus 9% interest over the term of the Chapter 13 Plan, through payments of $5,325.00 per month to the Standing Trustee, Craig Phelps. Of those funds, $3,840.00 per month is to be distributed to Peterson Bank. Debtors will in addition maintain their own property insurance and will pay property taxes. This provides the creditor with adequate protection payments monthly, protection against fire or other casualty loss, and protection

against loss of property due to non-payment of real estate taxes. Debtors own and operate several small florist shops. They work hard and seem to have their present finances and cash needs under control and, with some difficulty, appear reasonably able and likely to be able to make their proposed Plan payments.

As noted, the secured claim held by Peterson Bank is secured by Debtor's principal residence. The last payment was due under the contract on November 1, 1994, prior to the filing of this bankruptcy case. Debtors' present case was not filed until May 8, 1995. Therefore, amendments to the Bankruptcy code under the Bankruptcy Reform Act of 1994 that became effective October 22, 1994, are effective as to this case.

Despite Debtors' lack of equity, the Bank's first mortgage lien on Debtors' home remains adequately protected. Using the lowest appraisal on the property given by Peterson Bank of $210,000.00, the value of the property sufficiently covers the $185,000.00 debt due to Peterson Bank. Even if Debtors fail to complete the Chapter 13 Plan, Peterson Bank will be receiving substantial funds each month until such time, and the value of the property would pay this debt as first lien should it go to a judicial sale.

The property is Debtors' principal residence. In order for them to reorganize effectively, they and their family must have some place to live; they cannot live in their flower stores. If they lose this home, no alternative residence is presently available.

Peterson Bank has not met its burden under 11 U.S.C. § 362(d)(2) because Debtors do need this home for their financial rehabilitation and reorganization. Thus, the Motion to modify stay cannot prevail under that provision. Since Peterson Bank is adequately protected, it cannot prevail under 11 U.S.C. § 362(d)(1).

That leaves for decision the question of whether Debtors can modify a mortgage on their residence here when their bankruptcy was filed after the mortgage came due.

Any fact findings contained in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

Subject matter jurisdiction lies over this matter under 28 U.S.C. § 1334(b). Venue lies under 18 U.S.C. § 1409. Thus, this matter has been properly referred here under 28 U.S.C. § 157 and Local General Rule 2.33(A) of the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(G).

Peterson Bank relies on 11 U.S.C. § 1322(b)(2) and § 1322(b)(5), which provide:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim *on which the last payment is due after the date on which the final payment under the plan is due.*

(Emphasis added.)

Debtors rely on 11 U.S.C.A. § 1322(c), as amended, which provides:

*Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—*

(1) *a default with respect to,* or that gave rise to, *a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that* is conducted in accordance with applicable nonbankruptcy law; and (2) *in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modi-*

*fied pursuant to Section 1325(a)(5) of this title.*

(Emphasis added.)

Peterson Bank's brief cites authorities holding that § 1322(b)(2) bars a cure or modification of a home mortgage debt that matured pre-petition. *See, e.g., In re Davis,* 91 B.R. 477 (Bankr.N.D.Ill.1988) (Schmetterer, J.); *In re Threats,* 159 B.R. 241 (Bankr. N.D.Ill.1993) (Katz, J.). However, those cases predated the Bankruptcy Reform Act of 1994 ("BRA 1994"), which became effective as to matters applicable here in bankruptcy cases filed after October 22, 1994. This bankruptcy proceeding was filed on May 8, 1995.

Peterson Bank relies solely on 11 U.S.C. § 1322(b)(2) and fails to address the new language in 11 U.S.C. § 1322(c).

In the 1994 amendments to the Bankruptcy Code, Congress provided that, *"notwithstanding* subsection (b)(2) and *applicable non-bankruptcy law"*, a Chapter 13 debtor may cure a default with respect to a lien on his or her principal residence until the property is sold at a foreclosure sale. 11 U.S.C. § 1322(c)(1) (Supp.1995) (emphasis added). Since the property in question here has not been sold by foreclosure sale, Debtors continue to have such rights.

Prior to enactment of the BRA 1994, the Code had provided that curing of a home mortgage nonmodifiable in Chapter 13 was limited to cases in which the last payment under the mortgage "is due after the date on which the final payment under the plan is due...." 11 U.S.C. § 1322(b)(5).

█ The BRA 1994 amended the Bankruptcy Code to permit modification of claims secured only by a security interest on the debtor's principal residence when the last payment on the original payment schedule is due before the date on which the final payment under the plan is due.[1] Although the debtor cannot extend the mortgage term indefinitely, the debtor can pay the mortgage balance over the life of the Chapter 13 plan, a period which may be as long as five years.[2] This extension enables debtors to retain their homes for a few additional years and may enable them to sell their homes at a more favorable economic time, obtain replacement financing, or hope that their economic circumstances change for the better so that they may pay off the mortgage debt.

Thus, under § 301 of the BRA 1994, now found in § 1322(c) of the Bankruptcy Code, Debtors' obligation to Peterson Bank may be "cured" during the life of their Chapter 13 Plan.

The new provision, by specifically permitting cure under § 1322(b)(3), notwithstanding § 1322(b)(2), implicitly overrules cases such as *Seidel v. Larson (In re Seidel),* 752 F.2d 1382 (9th Cir.1985), which held that a debtor could not cure a fully matured mortgage because such a cure would be a modification prohibited by § 1322(b)(2).

The changes made by this section, in conjunction with those made in section 305 of the BRA 1994, also overrule the result in *First Nat'l Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991), with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. In that case, the Third Circuit held that subsequent to foreclosure judgment, a chapter 13 debtor cannot provide for a mortgage debt by paying the full amount of the allowed secured claim in accordance with Bankruptcy Code section 1325(a)(5), because doing so would constitute an impermissible modification of the mortgage holder's right to immediate payment under Section 1322(b)(2) of the Bankruptcy Code. The statute now makes clear that judicial sale is the bright line that cuts off a debtor's rights, not foreclosure judgment. *See* H.R.Rep. No. 103–834, 103rd Cong., 2nd Sess. 33–34 (Oct. 4, 1994); U.S.Code Cong. & Admin.News 1994, p. 3336, 140 Cong.Rec. H10769 (Oct. 4, 1994).

Any conclusions of law contained in the Findings of Fact will stand as additional Conclusions of Law.

---

**1.** 11 U.S.C. § 1322(c)(2), added by Section 301(2) of the BRA 1994.

**2.** *See* 11 U.S.C. § 1322(d), formerly Section 1322(c) until changed to subsection (d) by Section 301(1) of the BRA 1994.

### CONCLUSION

For reasons set forth above, the Court has earlier entered an order conditionally denying the motion to modify stay. The conditions are that Debtors obtain confirmation within 60 days and that they make timely payments due under their confirmed Plan.