**In re Jimmy SARKESE and Sara Anne Sarkese, Debtors.**

**Bankruptcy No. 95–501–BKC–3P3.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 4, 1995.

David J. Pinkston, Jacksonville, Florida, for debtors.

David Lee, Jr., Lee, Hallowes & Green, Chtd., Orange Park, Florida, for A.E. McWilliams.

Mamie L. Davis, Chapter 13 Trustee, Jacksonville, Florida.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon A.E. McWilliams' objection to Confirmation of the Chapter 13 plan of reorganization submitted by Jimmy Sarkese and Sara Anne Sarkese. Upon consideration of the evidence presented at the Confirmation Hearing held on October 10, 1995, legal memoranda and other documentation submitted by the parties, the testimony of witnesses, and applicable authorities, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On September 1, 1988, Merit Home Builders, Inc., through its Vice President A.E. McWilliams (McWilliams), entered into an agreement with Jimmy and Sara Anne Sarkese (debtors), evidenced by a mortgage and a promissory note. (Movant's Ex. 1–2). Merit Home Builders, Inc., assigned the mortgage and promissory note executed by debtors to McWilliams on September 1, 1988. (Movant's Ex. 3). McWilliams therefore holds a purchase money first mortgage on debtors' residence. (Record at 45). The Mortgage, Note and Assignment of Mortgage were recorded on September 8, 1988 in the Public Records of Clay County, Florida. (Record at 22).

2. The promissory note provides that debtors shall pay the holder of the mortgage and note the sum of $69,900.00 with interest at the rate of 10.5% per anum. (Movant's Ex. 1). The promissory note also contained the following provision:

> [Debtors shall pay the] sum of $639.40 including principal and interest on the 1st of October, 1988 and the further sum of $639.40 including principal and interest on the 1st day of each and every month thereafter for the total of 35 payments. On the 36th payment the entire principal plus interest accrued thereon shall become due and payable. Payments as made shall first apply to interest and balance to the reduction of the principal sum remaining from time to time paid.

(*Id.*). The promissory note further states that, "[t]his is a balloon mortgage and the final payment or the balance due upon maturity is $69,519.59, together with accrued interest, if any, and all advancement made by the mortgagee under the terms of this mortgage." (*Id.*). The debtors' Summary of Schedules and Schedule "A" list the value of

debtors' residence at $72,373.26. (Record at 7).

3. The full amount owed under the mortgage, by its own terms, became due or "ballooned" on or about September of 1991 because the thirty-sixth payment was due September 1, 1991.[1] Debtors made thirty-five monthly payments of $639.40. On the thirty-sixth (36th) payment, the debtors did not pay the full amount due under the terms of the mortgage. (Record at 46). Rather, debtors continued making monthly payments of $639.40 until June of 1994. (*Id.*). McWilliams did not enforce the provisions of the "balloon" mortgage to collect the total amount due under the terms of the mortgage agreement. (*Id.*). McWilliams continued accepting monthly mortgage payments from debtors. (*Id.*). Debtors made sixty-nine (69) monthly payments of $639.40 from October 1, 1988 to June 1994 totaling $44,118.60.

4. Debtors alleged that they experienced severe medical problems, and consequently began experiencing financial hardships around June of 1994. (Record at 29, 46). As a result, debtors incurred a mortgage arrearage of $7,680.00. (*Id.*). In November of 1994, McWilliams commenced foreclosure proceedings against debtors in the Circuit Court of the Fourth Judicial Circuit in and for Clay County, Florida. (Record at 22, 46). Debtors contend that these difficulties prompted them to seek the protection of the bankruptcy court. (*Id.*) On February 13, 1995, Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. (Record at 1).

5. During the progression of this case McWilliams twice moved for lifting the Automatic Stay. First, on April 18, 1995 McWilliams moved for an Order Granting Relief from the Automatic Stay pursuant to 11 U.S.C. § 362 to proceed with foreclosure proceeding in state court. (Record at 22). This Court issued an order abating McWilliams' Motion for Relief from the Stay due to improper service. (Record at 23). On April 21, 1995, McWilliams filed an Amended Motion for Relief from the Stay that provided for

proper service. (Record at 24). On June 21, 1995, the Court entered an Order allowing McWilliams to proceed in state court for the entry of a Summary Final Judgment against the debtors in the foreclosure proceeding. (Record at 28). However, the Stay remained in effect forbidding the sale of the debtors' property. (*Id.*).

6. On July 24, 1995 McWilliams again moved for Relief From the Automatic stay pursuant to the Court's previous order dated June 21, 1995, contending that debtors failed to make payments under the Chapter 13 plan. (Record at 34). After McWilliams amended the Motion for Relief From the Stay to provide for proper service, the Court entered an Order on the Amended Motion providing that debtors shall make two payments of $639.40 to the Chapter 13 Trustee by September 29, 1995, and if debtors failed to make payments the Stay will be lifted. (Record at 43).

7. Debtors have twice amended their Chapters 13 plan. (Record at 9, 19 and 29). Debtors also moved to extend payments under their Chapter 13 plan from thirty-six (36) months to sixty (60) months to cure the mortgage arrearage for $7,680.00. (Record at 36). Debtors' Second Amended Chapter 13 plan, which is the subject of this confirmation, provides for payment of $639.40 to McWilliams for sixty (60) months. (Record at 29).

8. Debtors filed a Proof of Claim on July 13, 1995 valuing McWilliams' secured claim at $38,364.00. (Claim file at 13). On July 14, 1995, McWilliams was mailed a copy of the notice of the proof of claim filed. (*Id.*). McWilliams filed no objection with the Court as to the amount of the claim. Debtors' plan provides for the full-payment of McWilliams' secured claim of $38,364.00 over the life of the plan.

9. On July 17, 1995, debtors and the Chapter 13 Trustee filed a Joint Certification that this Chapter 13 case was ready for confirmation pursuant to 11 U.S.C. § 1325. (Record at 33). The confirmation hearing

---

1. Because payments, according to the promissory note, began on October 1, 1988, the thirty-fifth (35th) payment became due on August 1, 1991. Thus, the note ballooned on September 1, 1991 when the thirty-sixth payment became due.

was held on October 10, 1995. (Record at 44). At the hearing, McWilliams objected to the confirmation of debtors' Chapter 13 plan and asserts that the debtors debt matured prepetition by its own terms and debtors now owe $62,000.00 in principal, plus interest. (Record at 45). McWilliams also argues that debtors' plan should not be confirmed because it fails to provide for the full payment of $62,000.00 in principal, plus interest. (*Id.*). McWilliams maintains that 11 U.S.C. § 1322(c)(2) is applicable in this case, but to utilize this new section of the Bankruptcy Code one of three alternatives provided in 11 U.S.C. § 1325(a)(5) must be satisfied, and debtors have not done so here. (*Id.*).

10. Debtors also argue that 11 U.S.C. § 1322(c)(2) applies. Debtors simply argue that this new section of the Bankruptcy Code allows debtors an opportunity to reinstate their mortgage in their Chapter 13 plan of reorganization, which is a permissible modification of the rights of the secured claim holder of real property secured only by debtors' principal place of residence. (Record at 46).

## CONCLUSIONS OF LAW

The issue presented before the Court is whether the rights of the holder of a secured claim secured only by a security interest in real property that is the debtor's principal residence can be modified in the Chapter 13 plan of reorganization, and if so, what requirements must be satisfied. Before the enactment of the Bankruptcy Reform Act of 1994,[2] it was impermissible for a debtor to modify the contract rights of a secured claim holder in a Chapter 13 plan of reorganization with respect to the claim secured by debtor's principal residence. *See Nobelman v. American Savings Bank*, 508 U.S. 324, ——, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993). The newly enacted section 1322(c)(2) of the

Bankruptcy Code carved out an exception to subsection 1322(b)(2).[3] However, to utilize section 1322(c)(2) one of the three alternatives of 11 U.S.C. § 1325(a)(5) must be satisfied.

### A. An Exception to the Modification of Home Mortgages

■ This Court will first determine whether this case falls within the parameters of 11 U.S.C. § 1322(c)(2), which states that:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2) (1994). Neither the Bankruptcy Court of the Middle District of Florida, nor the Eleventh Circuit Court of Appeals has construed section 1322(c)(2). However, other courts that have construed subsection 1322(c)(2) have concluded that this section allows debtors to cure mortgages in their Chapter 13 plan if the last payment of the original payment scheduled for the mortgage is due before the final payment under the plan is due. *See In re Escue*, 184 B.R. 287 (Bankr.M.D.Tenn.1995); *In re Chang*, 185 B.R. 50 (Bankr.N.D.Ill.1995); *In re Jones*, 188 B.R. 281 (Bankr.D.Or.1995).

The court in *In re Escue* ruled that subsection (c)(2) was specifically created to allow the debtors with a "short-term" or "balloon" mortgage payment that matured prepetition to provide for such payments in the life of the plan. *Escue*, 184 B.R. at 288. The court reasoned that Congress intended for debtors to be able to cure defaults on short-term

---

**2.** Pub.L. No. 103–394 (applicable to cases filed after October 22, 1994).

**3.** Section 1322(b)(2) provides that:
(b) Subject to subsections (a) and (c) of this section, the plan may—

    .    .    .    .    .

(2) modify the rights of holders of secured claims, other than a claim secured only by a

security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of the holders of any class of claims;
11 U.S.C. § 1322(b)(2) (1994).

mortgages that matured or ballooned before the petition date under section 1322(c)(2). *Id.* at 292.

Further in *In re Chang,* although the debtors relied on subsection (c)(2), the mortgagee failed to address that subsection, and relied solely on section 1322(b)(2) to support its argument that debtors cannot cure mortgage arrearage in their Chapter 13 plan. *Chang,* 185 B.R. at 53. The court concluded that subsection 1322(c)(2) creates an exception to subsection 1322(b)(2) and proceed to analyze that section. *Id.* The court ruled that subsection 1322(c)(2) allows debtor to cure the mortgage that ballooned prepetition over the life of the plan. *Id.* The court reasoned that the Bankruptcy Reform Act of 1994 amended the Bankruptcy Code to permit modification of claims secured only by a security interest on the debtors' principal residence when the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. *Id.*

Finally the court in *In re Jones* the ruled that subsection (c)(2) allows the debtor to spread the prepetition ballooned mortgage debt over the life of the plan. *Jones,* 188 B.R. at 281–82. The court reasoned that Congress created subsection (c)(2) to allow debtors to hold on to their residence by paying the mortgage payment through the plan. *Id.* at 283–84.

This Court agrees that section 1322(c)(2) allows the debtors in this case to provide McWilliams with payment of the ballooned mortgage over the life of the Chapter 13 plan. *See* 11 U.S.C. § 1322(c)(2). Neither debtors nor McWilliams disputes that section 1322(c)(2) applies in this case. (Record at 45, 46). However, one of the three alternatives provided in section 1325(a)(5) must be satisfied to utilize section 1322(c)(2). Thus, the Court now turns to the requirements of section 1325(a)(5).

### B. Section 1325(a)(5)

Modification of an allowed secured claim under the Chapter 13 is provided for in section 1325(a)(5) of the Bankruptcy Code, which states that:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5) (1994). The Court will not address subsections 1325(a)(5)(A) and (a)(5)(C) because McWilliams has not accepted the proposed plan terms and the debtors have not surrendered the property. Thus, the Court will proceed under subsection 1325(a)(5)(B), commonly referred to as Chapter 13 "cram down."

#### 1. Allowed Secured Claim

Section 1325(a)(5) specifically relates to "allowed secured claim." *See* 5 Colliers on Bankruptcy, ¶ 1325.06 (15th ed. 1993). A debtor who is liable to a secured creditor may file of proof of claim if a creditor does not timely file a proof of claim of such creditor's claim. *See* 11 U.S.C. § 501 (1994). A proof of claim filed under section 501 of the Bankruptcy Code is deemed allowed, unless a party in interest objects. *See* 11 U.S.C. § 502 (1994). Further, Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of validity and amount of the secured claim." Fed. R.Bankr.P. 3001(f).

In this case, debtors filed a proof of claim on July 13, 1995, which provided that McWilliams has a secured claim valued at $38,-364.00. (Claim file at 13). McWilliams was mailed a copy of the notice of the proof of claim on July 14, 1995. (*Id.*) McWilliams did not object to proof of claim filed by debtors. Therefore, the Court finds the proof of claim filed by debtors valuing McWilliams' secured claim at $38,364.00 to be valid.

### 2. Treatment of an Allowed Secured Claim Under the Chapter 13 Plan

■ To proceed under section 1325(a)(5)(B), the Chapter 13 plan must comply with following requirements:

(1) The plan provides that the holder of the claim will retain the lien securing the claim, and

(2) The value, as of the effective date of the plan, of property to be distributed under the plan, on account of such claim, is not less than the allowed claim.

11 U.S.C. § 1325(a)(5)(B). The purpose of this subsection is to protect the creditor's interest, and place the creditor in as good a position as if the debtors had surrendered the property. Colliers on Bankruptcy, ¶ 1325.06.

### a. Retention of Lien Securing Allowed Secured Claim

■ The first element simply requires that the plan provides that the holder of the allowed secured claim retains a lien securing the allowed secured claim. This requirement of subsection 1325(a)(5)(B) protects "the holder of an allowed secured claim from loss occasioned by a later failure on part of the debtor to complete the proposed plan...." Colliers on Bankruptcy, ¶ 1325.06[a]. The lien is satisfied when debtors have completed payments under the plan. Id. The creditor should be granted a lien securing the allowed secured claim only to extent of value of the allowed secured claim. Id.

In this case, the debtors' proposed Chapter 13 plan has not provided for the retention of a lien by McWilliams securing the claim until the plan is paid off. The debtors' Chapter 13 plan must be modified so that McWilliams retains a lien securing the deferred cash payments under the plan to the extent of the allowed secured claim until debtors have paid their final payment due under their Chapter 13 plan.

### b. Value of Property Distributed Under the Plan Equivalent to Amount of Allowed Secured Claim

■ The second element of section 1325(a)(5)(B) requires that the value of the property to be distributed under the plan on account of the allowed secured claim is not less than the amount of the allowed secured claim, as of the effective date of the plan. The term "effective date of plan" is the date of the confirmation hearing. Colliers on Bankruptcy, ¶ 1325.06[b][ii]. The "property to be distributed under the plan" is the "deferred cash payments representing future earnings or income of the Chapter 13 debtor, provided the present dollar value at confirmation of the property to be distributed in the future equals the amount of the allowed secured claim." Id. In order for the deferred cash payments, provided in present value, to be of equal value of the allowed secured claim, the claim should include an interest payment beyond the face amount of the allowed secured claim.[4] The Eleventh Circuit and this Court have held that the appropriate interest rate required in deciding *present value* is the "market rate."[5]

In this case, paragraph B(1) of debtors proposed Chapter 13 plan provides that "Trustee shall make the regular monthly payments of $639.40 (or such other monthly amount as may be required because of interest rate adjustments or escrow requirements changes) over the life of the plan." (Record at 29). However, at the confirmation hearing neither the debtors nor McWilliams provided the Court with evidence of the current market rate. Although McWilliams argues that payment through the plan should include interest, no evidence was proffered of the ap-

---

4. *Id.* at ¶ 1325.06[b][iii]. *See also* 5 Norton Bankruptcy Law and Practice 2d § 122:8 (1994) (providing an example, that "if the amount of the allowed secured claim is $3,000 at the time of confirmation and if the plan provides for the payment of $3,000 in equal monthly installments over the period of 36 months, the creditor would not receive value as of the effective date of the plan because payment of $3,000 in 36 months is not equal to $3,000 in cash today.").

5. *See United States v. Southern States Motor Inns, Inc. (In re Southern States Motor Inns, Inc.)*, 709 F.2d 647, 652 (11th Cir.1983) (holding in a Chapter 11 "cram down" case that, "the interest rate to be used in computing present value of a claim ... should be the current market rate...."); *In re Pinebrook, Ltd.*, 85 B.R. 160, 162 (Bankr.M.D.Fla.1988) (determining the appropriate interest rate in a Chapter 11 "cram down" case is the market rate).

plicable interest rate or current market rate. (Record at 45). The Court therefore turns to the agreement between the parties to calculate the appropriate interest rate.[6] The mortgage and promissory note provided for a ten and one-half percent (10.5%) per anum interest rate. (Movant's Ex. 1–2). Thus, an interest rate of 10.5% will be used to decide the present value of the allowed secured claim of $38,364.00.

## CONCLUSION

This Court holds that the debtors' Chapter 13 plan of reorganization to pay fully matured mortgage through a sixty (60) month plan is not an impermissible modification of McWilliams' rights in the purchase money mortgage agreement the debtors hold with McWilliams. The Court further holds that debtors can pay the final ballooned payment of the mortgage through their Chapter 13 plan, if McWilliams retains a lien securing future deferred payments under the plan, and there is a payment of 10.5% interest on the face amount of the allowed secured claim of $38,364.00 to equate the present value of the deferred payment under the plan with the amount of the allowed secured claim, as of the date of the confirmation hearing October 10, 1995.

McWilliams' objection to confirmation of debtors' Chapter 13 plan is overruled. In accordance with these findings of fact and conclusions of law, the Court will enter a separate order overruling McWilliams' objection to confirmation debtors' Chapter 13 plan of reorganization and directing Chapter 13 Trustee to prepare a Confirmation Order.

### ORDER OVERRULING A.E. McWILLIAMS' OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN AND DIRECTING CHAPTER 13 TRUSTEE TO PREPARE CONFIRMATION ORDER

This case came before the Court upon A.E. McWilliams' objection to Confirmation of Jimmy Sarkese and Sara Anne Sarkese's Chapter 13 plan of reorganization. Upon Findings of Fact and Conclusions of Law separately entered, it is,

**ORDERED:**

1. A.E. McWilliams' Objection to the Chapter 13 Confirmation Plan filed by Jimmy Sarkese and Sara Anne Sarkese's is overruled.

2. Jimmy Sarkese and Sara Anne Sarkese's Chapter 13 plan of reorganization is permissible modification of A.E. McWilliams' rights as a secured claim holder pursuant to 11 U.S.C. § 1322(c)(2) (1994).

3. Debtors' Chapter 13 plan shall be modified pursuant to 11 U.S.C. §§ 1322(c)(2) and 1325(a)(5)(B) (1994).

4. The Chapter 13 Trustee shall prepare the Confirmation Order which should contain the following:

(a) A.E. McWilliams shall retain a lien securing the future payments under the plan.

(b) Debtors shall make payment of 10.5% interest on the face amount of the allowed secured claim of $38,364.00 so that the present value of the deferred payment under the plan is equivalent to the amount of the allowed secured claim, as of the date of the confirmation hearing October 10, 1995.

---

**6.** Although section 1322(e) of the Bankruptcy Code provides that the liability for interest is to be determined in accordance with the agreement and nonbankruptcy law, this Court has not relied on this subsection because it applies only to agreements entered into after October 22, 1994. *See* 11 U.S.C. § 1322(e) (1994); *See also* H.R.Rep. No. 103–835, 103rd Cong., 2d Sess., 55 (1994), U.S.C.C.A.N.1994, pp. 3340, 3364 (stating that subsection 1322(e) "will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall."). However, the Court finds the Congressional intent that motivated enactment of the new subsection persuasive.