**In re Aida Merle IBARRA, Debtor.**

**Bankruptcy No. 98–05517 (ESL).**

United States Bankruptcy Court,
D. Puerto Rico.

June 18, 1999.

Wallace Vázquez Sanabria, San Juan, Puerto Rico, for creditor/movant.

Victor Thomas Santiago, San Juan, Puerto Rico, for debtor/respondent.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Bankruptcy Judge.

Before the Court is the Objection to Confirmation filed by secured creditor Virgilio López Quiñonés ("Creditor"). Creditor asserts that the proposed plan of reorganization violates Section 1322(b)(2) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(2), by attempting to modify its rights arising out of a short-term promissory note secured only by Debtor's residence that had matured prior to Debtor's petition for relief. Debtor alleges that it may cure the arrears and pay in full the claim pursuant to 11 U.S.C. §§ 1322(b)(3) and 1322(c)(2).

### I. Jurisdiction and Procedure

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C.

§§ 151, 157, and 1334(b). This is a "core proceeding" which the Court may hear and enter appropriate judgement pursuant to 28 U.S.C. § 157(b)(2)(L).

## II. Factual and Procedural Background

The facts of this case are undisputed. Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on April 27, 1998. Creditor has a perfected third lien mortgage over Debtor's residence by virtue of a deed properly recorded at the Registry of Property. The deed secures a promissory note dated August 29, 1996 in the original principal amount of $17,500.00. *See,* Copy of deed and promissory note attached to Proof of Claim no. 5. The note fully matured, becoming due and payable, on August 29, 1997, prior to Debtor's bankruptcy filing. The Debtor has failed to make the required payment to Creditor. As of June 26, 1998, the date that Creditor filed its proof of claim, the total unpaid balance of the note was $17,500.00 in principal, plus $1,750.00 in attorney fees and $2,619.71 in interests through July 13, 1998 and a per diem factor of 3.8356 thereafter, with interest accruing at the rate of eight percent. In sum, Creditor claimed the total amount of $21,869.71 in arrearage and other charges. Proof of claim no. 5.

Debtor filed a plan of reorganization on April 27, 1998, to which Creditor objected. Creditor argues that the proposed plan should not be confirmed because 11 U.S.C. § 1322(c)(2) bars Debtor from "modify[ing] the rights of a creditor holding a fully secured interest encumbering Debtor's residence, when the underlying indebtedness is a short term non-purchase money loan." Moreover, Creditor asserts that the plan "is not properly funded and is not feasible, as Debtor does not have the ability to pay offered amounts if they were to increase the monthly payments to properly fund the Plan, and the Plan does not consider interest as required of the Mortgage Note."

Debtor filed an amended plan on July 8, 1998 (hereinafter referred to as the "Amended Plan"). Debtor's Amended Plan proposes to pay in full over the life of the Plan the Creditor's proof of claim.

On July 9, 1998, Debtor responded by setting forth four reasons why it could provide for Debtor's claim within the Plan. First, Debtor argues that 11 U.S.C. § 1322(c)(2) allows for payment of the full amount of a short term mortgage over the life of the Plan as long as Debtor pays the full amount of the allowed secured claim. Secondly, Debtor asserts that she could pay Creditor under 11 U.S.C. § 1322(b)(3), which provides for the curing of any default. Third, Debtor claims that she has proven to have the ability to pay the amount call in under the Plan and to be able to pay increases of the Plan after the first year. Fourth, Debtor asserts that the Plan meets all of the requirements set forth by 11 U.S.C. § 1325.

On July 13, 1998, the Court held a hearing on confirmation. The Court denied Creditor's Objection to Confirmation with respect to the issue of feasibility. Nonetheless, the Court granted the parties fifteen days to brief the issue on whether a debtor may modify the rights of a secured creditor holding a lien over Debtor's residence.

Creditor filed a Memorandum of Law in support of his Objection to Confirmation on July 31, 1998. Creditor reiterated the arguments set forth in his Objection to Confirmation regarding the antimodification provision of 11 U.S.C. § 1322(b)(2), the feasibility of the plan, and the omission of an interest rate. Moreover, Creditor asserted that the Plan does not comply with 11 U.S.C. § 1325(a)(5) because the amount to be distributed under the Plan on account of Debtor's claim is less than the allowed amount of the claim. Debtor filed a motion on August 4, 1999, submitting her Answers to Objection to Confirmation filed on July 9, 1998, as her Memorandum of Law.

## III. Controversy

The dispositive issue to be decided is whether Debtor's Chapter 13 plan may provide for the payment of the debt secured only by Debtor's residence by full payment through the plan, when the last payment under the original obligation came due prior to the commencement of the bankruptcy case.

## IV. Discussion
### *Feasibility of the Plan*

One of the requirements for confirmation of a Chapter 13 plan is that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). The Court must determine whether the plan is feasible in light of the debtor's budget, that is, whether the proposed payments can be made. In this case, Creditor argues that the Plan is not feasible. However, at the hearing on confirmation held on July 13, 1998, the Court determined that the Amended Plan is feasible and denied Creditor's Objection to Confirmation with respect to the issue of feasibility. The Court declines to revisit the feasibility issue when no additional issues are presented.

### *Payment of a secured claim on debtor's residence*

Prior to the enactment of the Bankruptcy Reform Act of 1994, courts addressing the question of whether a debtor's Chapter 13 plan may provide for the payment of a debt secured only by the debtor's principal residence by full payment through the plan, when the last payment under the original obligation came due prior to the commencement of the bankruptcy case reached varied conclusions. Some courts denied confirmation because they proposed an impermissible modification of a secured lender's rights, while other courts approved confirmation of similar plans, finding that the debtor was merely curing a default, and not modifying the rights of the secured party. The controversy arose from the conflict between the prohibition in 11 U.S.C. § 1322(b)(2) against modifying the rights of a creditor secured by a home mortgage, and the power to cure any default found in 11 U.S.C. §§ 1322(b)(3) and (5). Because the term modify is not defined anywhere in the Bankruptcy Court and the definition intended by Congress is unclear, numerous courts analyzed the legislative history and arrived at different conclusions.

The first line of cases stems from the decision in *Seidel v. Larson (In re Seidel)*, 752 F.2d 1382 (9th Cir.1985), in which the Court of Appeals for the Ninth Circuit considered whether a Chapter 13 plan which proposed to satisfy a home mortgage loan that matured pre-petition could be confirmed. The court concluded that this was an impermissible modification of the home mortgage. The Court discussed the plain meaning of the word "modification," the concept of "cure," and the legislative intent. In the Court's view, the plain meaning of the word "modification" in subsection (b)(2) barred Seidel's plan. By postponing payment of the debt beyond the time originally contemplated by the parties to the contract, his plan constituted an unilateral "modification" of the original debt contract. *Id.,* at 1384. The Court explained that those decisions that held that a home mortgage loan which matured pre-petition could be cured under the Chapter 13 plan,

> rely on the fact that "the plain meaning of 'cure,' as used in § 1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the status quo ante." ... When a debt has been accelerated, "cure" therefore results in the reinstatement of the original payment terms of the debt. But when a debt has already naturally matured—as in Seidel's case— "cure" as defined by these courts, cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable.

*Id.,* at 1386 (citations omitted).

The second line of cases held that a home mortgage loan which had fully ma-

tured prior to the commencement of the bankruptcy case could be cured under a Chapter 13 plan. This line of cases developed from the reasoning of the Second, Fifth, and Seventh Circuit Courts of Appeal in the cases of *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982), *Grubbs v. Houston First American Sav. Ass'n*, 730 F.2d 236 (5th Cir.1984), and *Matter of Clark*, 738 F.2d 869 (7th Cir.1984). *Taddeo* and *Clark* involved accelerated long-term home mortgage loans, and *Grubbs* involved an accelerated home mortgage loan which would naturally mature during the term of the Chapter 13 plan. After examining the legislative history of 11 U.S.C. §§ 1322(b)(2), (3), and (5), the courts concluded in all three cases that the statutory language was not intended to preclude a debtor from either curing a prepetition acceleration into maturity of the unpaid installments due on a home mortgage or from proposing that all past due or matured amounts so secured be paid during the life of the plan.

Although the Court of Appeals for the First Circuit has not addressed this issue, the U.S. Bankruptcy Court for the District of Massachusetts held in *In re Baxter*, 155 B.R. 285 (Bankr.D.Mass.1993) (Feeny, J.) that a Chapter 13 debtor may not "cure" an unaccelerated residential mortgage that matured by its own terms prior to the filing of a Chapter 13 bankruptcy petition. Relying on *In re Seidel, supra*, the court held that "a plan which extends the time for payment of a note beyond the time originally contemplated by the parties has been held to 'modify' the rights of the mortgagee in violation of § 1322(b)(2)." 155 B.R. at 287. The Bankruptcy Court for the District of Rhode Island reached the same conclusion in *In re Manocchia*, 157 B.R. 45 (Bankr.D.R.I.1993) (Votolato, A.).

The Bankruptcy Reform Act of 1994 amended the Bankruptcy Code to permit modification of claims secured only by a security interest on the debtor's principal residence when the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. 11 U.S.C. § 1322(c)(2). This 1994 amendment releases Chapter 13 debtors with "short-term" home mortgages from the antimodification provisions of 11 U.S.C. § 1322(b)(2). The new provision, however, "is not a model of clarity with respect to mortgages that matured, ballooned or were subject to demand *before* the petition. The last payment 'on the original payment schedule' for such a mortgage would certainly be due before the final payment under the plan—the last payment was due before the borrower became a Chapter 13 debtor." 1 Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.50, at 240 (2nd ed. Supp.1996). The decisions interpreting the new section have concluded that a mortgage that matured or ballooned before the petition can be paid in full through the plan. *Id.*, at 241. *See* also, 5 Daniel R. Cowans, *Bankruptcy Law and Practice* § 19.18, p. 49 (7th ed.1998); 8 Lawrence P. King, *Collier on Bankruptcy* ¶ 1322.15, at 1322–51 (15th ed. rev. 1998). In fact, various courts have held that the new provision, by specifically permitting cure under 11 U.S.C. § 1322(b)(3), notwithstanding § 1322(b)(2), implicitly overruled the decision of the Court of Appeals for the Ninth Circuit in *In re Seidel, supra*, which held that a debtor could not cure a fully matured mortgage because such a cure would be a modification prohibited by 11 U.S.C. § 1322(b)(2). *See*, for example, *In re Chang*, 185 B.R. 50, 53 (Bankr.N.D.Ill.1995); *In re Jones*, 188 B.R. 281, 284 (Bankr.D.Or.1995); *In re Watson*, 190 B.R. 32, 36 (Bankr.E.D.Pa. 1995). Accordingly, "where the debt matures before the petition on a short-term debt, the plan may pay off the debt on installments" during the life of the plan. 5 Cowans, *supra*, § 1918, at 49. Courts construing section 1322(c)(2), other courts that have construed section 1322(c)(2) have concluded that this section allows debtors to cure the default on a note which matured pre-petition. *See*, *In re Escue*, 184 B.R. 287 (Bankr.M.D.Tenn.1995); *In re Chang*,

185 B.R. 50 (Bankr.N.D.Ill.1995); *In re Jones,* 188 B.R. 281 (Bankr.D.Or.1995); *In re Sarkese,* 189 B.R. 531 (Bankr.M.D.Fla. 1995).

The court in *In re Escue, supra,* considered whether a debtor may pay the final payment of a fully matured mortgage through a Chapter 13 plan. 184 B.R. at 292. The court ruled that 11 U.S.C. § 1322(c)(2) was specifically created to allow the debtors with a "short-term" or "balloon" mortgage payment that matured prepetition to provide for such payments in the life of the plan. 184 B.R. at 288. The court reasoned that although not perfectly clear from the language of the newly added section Congress intended for debtors to be able to cure defaults on short-term mortgages that matured or ballooned prior to the petition date under the referred section. The Court explained:

> Subsection (c)(2) appears to contemplate mortgages which mature post-petition, but the Congressional intent of this statute when considered in light of the other provisions of Chapter 13, and the overall objectives of bankruptcy, suggest that Congress also intended for debtors to be able to cure defaults on short-term mortgages which mature or balloon prior to the petition date.

184 B.R. at 292.

In *In re Chang* the court considered whether a debtor could modify a residential mortgage that expired prepetition. Although the debtors relied on section 1322(c)(2), the mortgagee failed to address that section, and relied solely on section 1322(b)(2) to support its argument that debtors could not cure a mortgage arrearage in their Chapter 13 plan. 185 B.R. at 53. The court concluded that section 1322(c)(2) creates an exception to section 1322(b)(2) and proceeded to analyze that section. *Id.* The court ruled that section 1322(c)(2) allows debtor to cure the mortgage that ballooned prepetition over the life of the plan. *Id.* The court reasoned that the Bankruptcy Reform Act of 1994 amended the Bankruptcy Code "to permit modification of claims secured only by a security interest on the debtor's principal residence when the last payment on the original payment schedule is due before the date on which the final payment under the plan is due." *Id.* The court clarified that "[a]lthough the debtor cannot extend the mortgage term indefinitely, the debtor can pay the mortgage balance over the life of the Chapter 13 plan, a period which may be as long as five years." *Id.*

Moreover, the court in *In re Jones, supra,* analyzed whether, given the prepetition maturity of the debtor's note, 11 U.S.C. § 1322(c)(2) authorizes the debtor to pay the obligation through the plan. The facts in that case are very similar to the ones in the case at bar. The creditor held a note secured solely by a second mortgage over debtor's residence. The debtor did not pay the final balloon payment which matured by its own terms prepetition. The debtor's plan proposed to repay the note, without interests, over the life of the plan. 188 B.R. at 281. The Court explained that although debtor's proposed plan would not have been confirmable in the Ninth Circuit prior to 1994 due to the Court of Appeals' decision in *In re Seidel, supra,* a case arising from the same state as *In re Jones, supra,* the amendments made by the Bankruptcy Reform Act allow the debtor to spread the prepetition ballooned mortgage debt over the life of the plan. 188 B.R. at 281–82. After examining its legislative history, the court concluded that although section 1322(c)(2) facially does not address those circumstances in which a mortgage debt on a principal residence became due prior to the commencement of the bankruptcy case, it is permitted. 188 B.R. at 283–284. The court explained that:

> ... given the policy of supporting the debtor's attempts to retain his residence which pervades this new section there is no reasonable basis to assume that Congress intended that creditors whose mortgages may have matured by their own terms just prior to a Chapter 13

filing would not be prohibited by the filing from pursuing their nonbankruptcy rights while those creditors whose mortgages matured by their own terms just after the bankruptcy filing would be required to receive payments on the mortgage through the plan.

188 B.R. at 284. Moreover, the court held that the *Seidel* holding was overruled by the inclusion of 11 U.S.C. § 1322(c)(2). *Id.*

Finally, in *In re Sarkese, supra,* the court considered whether the rights of the holder of a secured claim secured by a lien over debtor's residence can be modified by a Chapter 13 plan. After analyzing the three decisions discussed previously, the court concluded that section 1322(c)(2) allows debtors in that case to provide the creditor with payment of the ballooned mortgage over the life of the plan. 189 B.R. at 534–35.

In summary, the courts that have addressed the issue of whether 11 U.S.C. § 1322(c)(2) applies to matured or ballooned mortgage obligations have all answered in the affirmative. This Court also finds that section 1322(c)(2) allows Debtor in the instant case to provide Creditor with payment of the debt over the life of the Chapter 13 plan. The legislative history, the stated objectives of Chapter 13, and Congress' preference for a Chapter 13 filing rather than a Chapter 7, show Congressional intent to allow debtor to cure a debt secured only by debtor's residence by full payment through the plan, when the last payment under the original obligation came due prior to the commencement of the bankruptcy.

Creditor's brief cites authorities holding that 11 U.S.C. § 1322(b)(2) bars a cure or modification of a home mortgage debt that matured pre-petition. *See, In re Seidel, supra; In re Harlan,* 783 F.2d 839 (9th Cir.1986). However, these cases predate the Bankruptcy Reform Act of 1994, which became effective as to matters in bankruptcy cases filed after October 22, 1994. This bankruptcy proceeding was filed on April 27, 1998. The new provision, by specifically permitting cure under 11 U.S.C. § 1322(b)(3), notwithstanding § 1322(b)(2), implicitly overruled the *Seidel* case. Furthermore, the *Harlan* case is inapposite to the case at bar. It involves a balloon payment on a note which became due after the plan was confirmed and the debtor did not pay. When the creditor filed a relief from the stay, the court denied it holding that the plan had been duly confirmed and the creditor was bound by the plan's provisions under § 1327(a). The Ninth Circuit reversed, noting that the confirmed plan had not mentioned the balloon payment and that absent the creditor's consent, a plan could not modify the terms of the promissory note. This holding is inapplicable to the facts of this case. Similarly, Creditor cites *In re Martin,* 176 B.R. 675 (Bkrtcy.D.Conn.1995) in support. That case is also inapposite to the present case. The dispositive issue in *Martin* was whether a prepetition default or violation of a due-on-sale mortgage clause could be "waived" through the confirmation of a Chapter 13 plan. The Court held that the debtor, who was an unauthorized transferee of a mortgage property, could not, pursuant to the plan and sections 1322(b)(2) and (3), waive the default by extinguishing mortgagee's right to exercise its option under the clause.

Section 1322(c)(2) allows the debtor to provide payments through the plan on a debt that matured prepetition only if the debtor meets the requirements of section 1325(a)(5). Section 1325(a)(5) states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . .

(5) with respect to each *allowed secured claim* provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) *the plan provides that the holder of such claim retain the lien securing such claim; and*

(ii) *the value, as of the effective date of the plan, of property to be distributed*

*under the plan on account of such claim is not less than the allowed amount of such claim;* or

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5) (emphasis added).

It is important to note that section 1325(a)(5) relates exclusively to "allowed secured claim[s]." 8 King, *supra,* ¶ 1325.06[1][a], at 1325–4. A claim or interest is deemed allowed by filing a proof of claim pursuant to section 501(a) of the Bankruptcy Court to which no objection is made. 11 U.S.C. § 502(a). Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of validity and amount of the secured claim." Fed.R.Bankr.P. 3001(f). Thus, in order to be entitled to the evidentiary weight afforded by Rule 3001(f), a proof of claim must comply with the Bankruptcy Rules, including Rule 3001, and set forth the facts necessary to support the claim. 9 King, *supra,* ¶ 3001.09[1], at 3001–26. Rule 3001 requires that the proof "be in writing; set forth the creditor's claim; be executed by the creditor or an authorized agent; attach writings on which a claim or an interest in the debtor's property which secures the claim is based; and attach documents evidencing perfection of any security interest." 9 King, *supra,* ¶ 3001.01, at 3001–5 – 6.

On June 26, 1998, Creditor filed a secured proof of claim for $21,869.71. The proof of claim complies with all the requirements set forth in Rule 3001. Creditor used Official Form 10, and included a copy of the promissory note and the mortgage deed as supporting documents. The documents filed set forth the facts necessary to support the claim. Having met these requirements, the proof of claim filed "constitute *prima facie* evidence of validity and amount of the secured claim." Fed.R.Bankr.P. 3001(f).

Moreover, the Debtor had the opportunity to object the proof of claim and to introduce evidence sufficient to rebut the presumption of validity. The Debtor, however, did not file an objection. In view of these facts, the Court finds the proof of claim filed by debtors valuing Creditor's secured claim at $21,869.71 to be valid.

Moreover, section 1325(a)(5) provides that in the event that the debtor does not surrender the collateral to the creditor or the creditor accepts the plan, the debtor may keep the property, so long as the secured creditor retains its lien and receives payments equal to its present value. *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 954–55, 117 S.Ct. 1879, 1880–81, 138 L.Ed.2d 148 (1997). The purpose of this subsection is to protect the creditor's interest, and place the creditor in as good a position as if the debtors had surrendered the property.

The first requirement is that the plan provides for the holder of the allowed secured claim to retain the lien securing its claim. The purpose of this requirement is "to protect the holder of an allowed secured claim from loss occasioned by a later failure on part of the debtor to complete the proposed plan...." 8 King, *supra,* ¶ 1325.06[3][a], at 1325–29. The lien is effective only to secure payments to the extent of the amount of the allowed secured claim. To the extent the deferred payments exceed the value of the allowed secured claim and the debtor subsequently defaults, the lien will not secure unaccrued interest represented in such deferred payment. *Id.* The lien will be retained until the holder of the allowed secured claim has received all payments attributable to that claim under the plan. *Id.*

In the case at bar, the Amended Plan provides for the retention of a lien by Creditor securing the claim until the plan is paid off. The Amended Plan expressly provides that "Creditors having secured claims will retain their liens...." Hence, Debtor's Amended Plan complies with this first requirement because Creditor retains a lien securing the deferred cash payments

under the Plan to the extent of the allowed secured claim until Debtor has paid her final payment due under the Amended Plan.

▮▮▮ Section 1325(a)(5)(B) also requires that the value of the property to be distributed under the plan on account of the allowed secured claim is not less than the amount of the allowed secured claim, as of the effective date of the plan. Therefore, the Court must ascertain the present value of the secured claim to be paid under the plan. 11 U.S.C. § 1322(a)(5)(B)(ii). *See* also, 8 King, *supra,* ¶ 1325.06[3][b][iii][B], at 1325–34; 2 Lundin, supra, § 5.50, at 5–139–40 (Wiley 1995 & Supp.1996). The present value of the claim to be paid under the plan is to be determined as of the effective date of the plan. 11 U.S.C. § 1325(a)(5)(B)(ii).[1] Accordingly, the court must capitalize the deferred payments to be disbursed under the plan to the value equivalent to the sum if it were to be paid on the date of confirmation. 8 King, *supra,* ¶ 1325.06[3][b][iii][B], at 1325–35. The court cannot implement Section 1325(a)(5)(B)(ii) "simply by comparing the sum total of all deferred payments proposed by the plan with the allowed secured claim. The court must arrive at an appropriate discount factor so as to fairly discount value proposed to be given in the future on account of the allowed secured claim." *Id.*

▮▮▮ The purpose of the present value requirement is to place the holder of a secured claim who chose not to retrieve the collateral in the same economic position as if the collateral had been liquidated. *Id.* Therefore, the debtor is required to pay interest to compensate the holder of the claim for the delay in receiving its full compensation of the claim upon confirma-tion of the plan so that dilution of the claim is prevented.

▮▮▮ In order to ascertain the present value of the future installments, the current monetary discount factor must be applied. 5 Cowans, *supra,* § 19.19, at 74. "The interest or discount rate is assessed in a cramdown when payment is deferred in an attempt to avoid the dilution of the value of the allowed secured claim caused by the delay in payment and to compensate for the use of the creditor's money." *In re Rivera,* 144 B.R. 614 (Bankr.D.P.R. 1992) (De Jesús, S.). To determine whether a plan grants this present value through a proposed interest on the deferred payment, a debtor should show that, "in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a Chapter 13 plan ... propose[s] to pay interest on the face amount of the allowed secured claim at an appropriate discount rate over the course of the payment extension period." It is a mathematical calculation wherein "... the deferred payments [are capitalized] by converting the deferred payments proposed to be disbursed under the chapter 13 plan into an equivalent capital sum under the effective date of the plan." *Id.*

The issue before this Court is how to determine the appropriate interest rate to use in a present value analysis under section 1325(a)(5)(B)(ii). The Bankruptcy Code and its legislative history provide little guidance on how to determine the appropriate rate in a present value analysis. Further, courts addressing this issue have developed different strategies with varying rationales to determine the appropriate interest rate. The following is a list of the methods used by various jurisdictions:

---

1. The effective date of the plan "will ordinarily be provided for by the plan, and may be the date as of which the order confirming the Chapter 13 plan becomes final. However, the court will determine present value as of the date of the hearing of confirmation held under § 1324, because, as a practical matter, confirmation will almost always follow within a brief time after the issues raised under section 1325(a)(5)(B)(ii) are resolved." 8 King, *supra,* ¶ 1325.06[3][b][i], at 1325–32–33.

1) the current market rate for similar loans (the coerced loan approach);

2) the rate the creditor must pay to replace the funds (the cost of funds approach);

3) the "risk-free rate" which is based on treasury obligations or the prime rate plus an additional premium for risk;

4) the interest rate in the original contract;

5) the IRS judgment rate set forth in 26 U.S.C. § 6621;

6) the statutory judgment rate; and

7) the Treasury Bill rate without a risk factor.

*See, In re River Village Associates,* 161 B.R. 127, 135–36 (Bankr.E.D.Pa.1993) (citations omitted). *See* also, *In re Clark,* 168 B.R. 280, 282–83 (Bankr.W.D.N.Y. 1994).

In *General Motors Acceptance Corp. v. Jones,* 999 F.2d 63, 69 (3rd Cir.1993), the Court adopted a coerced loan approach to cram down interest rates, with the contract rate as the presumptive coerced local rate. In so ruling, the Court compared the formula approach, the cost of funds approach, and the coerced loan approach. The Court concluded that the "coerced loan [approach] presents a more complete picture of what happens in a cramdown," *id.* at 67, because:

1) present value requires that the secured creditor be put in an economic position equivalent to receiving the amount of its secured claim immediately;

2) present value should thus include the additional amounts that the secured creditor could generate in its business if the plan provided for immediate rather than deferred payment of its secured claim;

3) if the secured creditor received immediate payment and made a new loan, it would anticipate that over the course of the loan it would recover not only its costs of capital but also

its costs of servicing the loan and a profit.

*Id.,* at 66–67. *See,* David G. Epstein, *Don't Go and Do Something Rash About Cram Down Interest Rates,* 49 Ala.L.Rev. 435, 452 (Winter 1998) (analyzing the *Jones* decision). The Court acknowledged, however, that a coerced loan in a cram down proceeding is not the "precise equivalent" of a new loan outside of bankruptcy. *Id.,* at 68. One could argue that the absence of any loan marketing costs and lower monitoring costs make the coerced loan less costly. *Id.* One could also argue that the absence of an "equity cushion" and the existence of a problematic credit history make the coerced loan more costly. Nevertheless, the Court concluded that "the elements that would tend to make 'coerced loans' more costly to the secured creditor than new loans, and the elements that would tend to make 'coerced loans' less costly to the secured creditor than new loans will generally balance out. . . ." *Id.,* at 69.

The Court also held that when determining present value, it would be improper to exclude "profit" from the determination of an interest rate especially in a commercial context where Chapter 13, in effect, extends the lending relationship between the debtor and creditor. *Id.,* at 69. The Court explained that recognition of profit is consistent with the objective of section 1325(a)(5)(B)(ii) of putting "the creditor in the same position it would have been in if it had been allowed to end the lending relationship at the point of the bankruptcy filing by repossessing the collateral. . . ." *Id.*

Finally, after adopting the coerced loan approach, the Court established a rebuttable presumption that the contract rate on the existing loan between the debtor and creditor is the appropriate rate under the plan. *Id.,* at 70–71. This presumption may be rebutted by the creditor if the interest rates and other costs have increased since the inception of the loan contract. Conversely, the debtor may re-

but this presumption by producing evidence that the creditor's costs have decreased, thus necessitating a lower rate. *Id.,* at 71. The Court concluded that this contract rate rebuttable presumption would reduce the litigation costs involved with finding the appropriate market rate for similar loans. *Id.,* at 70.

We conclude that, in light of the purpose of the statutory provision and in order to determine the present value of the claim to be paid under the plan, the appropriate discount rate to be applied at the date of confirmation is the market rate, that is, the interest on a loan disbursed in that region at that time which is similar in character, amount and duration. *Id. See* also, 2 Lundin, § 5.51, at 5–141. To do otherwise contradicts the purpose behind section 1325(a)(5)(B)(ii) of the Bankruptcy Code. The present value determination should include an interest rate which incorporates costs and fees, including profits, because the Creditor is not only being deprived of the funds but the business that could be generated as a result. However, to prevent a windfall to the secured creditor at the expense of the unsecured creditors, the interest amount should never exceed the amount of interest provided in the original contract as previously agreed upon by the parties. *United Carolina Bank v. Hall,* 993 F.2d 1126, 1131 (4th Cir.1993). Moreover, to reduce litigation expenses associated with an individualized discount rate determination, this Court adopts the rebuttable presumption that the contract rate is the proper interest rate in a Chapter 13 case. This Court holds that the market rate, together with the rebuttable presumption approach, provides the best formula for a correct determination of the present value. "[T]his approach balances the competing considerations of maximizing judicial economy and ensuring an accurate reflection of the costs an risks associated with the secured lender's 'forced' extension of credit in the Chapter 13 plan." *Green Tree Financial Servicing Corp. v Smithwick (In the Matter of Smithwick),* 121 F.3d 211, 215 (5th Cir.1997) (citing *Jones, supra* ).[2]

In the case at bar, Debtor's Amended Plan does not provide for a discount factor. It merely states that the Trustee will pay in full the secured claim of Creditor in the amount of $21,870.00 over the life of the plan. However, at the confirmation hearing neither the Debtor nor Creditor provided the Court with evidence of the current market rate. Although Creditor argues that payment through the Plan should include interest, no evidence was proffered of the applicable interest rate or current market rate. Therefore, the Court denies the confirmation of Debtor's Amended Plan, and grants Debtor twenty (20) days from notice of this Opinion and Order to file an amended plan which includes the market rate interest on Creditor's claim, taking into consideration the method discussed in this opinion. Creditor and parties in interest have twenty (20) days from the date of notice to object. If no timely objections are filed the Amended Plan will be confirmed.

## V. CONCLUSION

Based upon the foregoing, the Court denies Creditor's Objection based upon 11 U.S.C. § 1322(c)(2). The Court finds that section 1322(c)(2) provides a remedy to cure a defaulted loan which matured prepetition. The Court having entered its

---

**2.** We note that bankruptcy courts within the First Circuit have declined to follow *Jones; supra,* and have adopted different approaches. For example, in *In re Galvao,* 183 B.R. 23 (Bankr.D.Mass.1995), the Court held that 'market rate plus' is the appropriate standard for determining present value under section 1325(a)(5)(B)(ii) of the Bankruptcy Code. While adopting a 'case by case' approach, the Court described a two-step procedure whereby the court determines the current market rate for similar loans and then considers a possible upward adjustment based on risk factors and the lender's lost opportunity costs. In *In re St.Cloud, et al.,* 209 B.R. 801, at 806–809 (Bankr.D.Mass.1997), the Court set an interest rate based on the current market rate plus one point premium for risk.

opinion in this matter and for the reasons set forth therein;

**IT IS HEREBY ORDERED** that confirmation of Debtor's Chapter 13 plan is denied;

**IT IS FURTHER ORDERED** that the Debtor shall file an amended plan within twenty (20) days from notice of this Order.

**IT IS FURTHER ORDERED** that any objections to the Amended Plan be filed within twenty (20) days from notice of the same. If no timely objections are filed the Amended Plan will be confirmed.

So ordered.