In re James JONES, Debtor.

Bankruptcy No. 395–32031psh13.

United States Bankruptcy Court,
D. Oregon.

Oct. 30, 1995.

Elizabeth A. Trainor, Portland, OR, for debtor.

Gerald and Marie Hough, in pro. per.

## OPINION

POLLY S. HIGDON, Bankruptcy Judge.

This matter came before the court on Gerald and Marie Hough's objection to the debtor's proposed Chapter 13 plan. The Houghs hold a note secured solely by a second mortgage in the debtor's principal residence. This debt matured by its own terms prior to the debtor's bankruptcy; the debtor did not pay the final balloon payment. The debtor proposes to repay the note, without interest, over the life of his plan. The Houghs, being *pro. per.*, were unable to identify the nature of their objection within the context of Code language. The court has identified the primary issue between the parties as whether, given the prepetition maturity of the Houghs' note, 11 U.S.C. § 1322(c)(2) authorizes the debtor to pay the obligation through his plan.[1]

Section 1322(b)(2) provides that a plan may not "modify the rights of holders of secured claims ... secured only by a security interest in real property that is the debtor's principal residence." There is no question that the Houghs hold a secured claim secured only by a security interest in the debtor's residence.

1. All references to Code sections are references to Title 11, U.S.C.A., the Bankruptcy Code, un-

less otherwise specifically stated.

In this circuit the debtor's proposed plan would not have been confirmable under the terms of the Bankruptcy Code in place prior to the amendments made by the Bankruptcy Reform Act of 1994. In a case arising from Oregon, *In re Seidel*, 752 F.2d 1382 (1985), the Ninth Circuit held that a delay in payment resulting from Chapter 13 plan provisions to pay a debt which matured prepetition by its own terms was an impermissible "modification" in violation of § 1322(b)(2). In *Seidel* the court stated that the plain meaning of "modification" includes a proposed payment schedule well beyond that originally contemplated by the parties. Further, it interpreted the legislative history of § 1322(b)(2) to "show a deliberate intention by Congress to insulate a certain subset of creditors—those wholly secured by home mortgages—from the general authority to modify [found] in section 1322(a)". *Id.* at 1386. Finally, it found the proposed payment could not qualify as a "cure" within either § 1322(b)(3) or (5) because a "cure" "restore[s] matters to the status quo ante." *Id.* If the original terms of the note were restored the whole amount would still be immediately due.[2]

. In *In re Nobelman*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) the Supreme Court held that bifurcation of a secured creditor's claim under § 506(a) between a secured and unsecured portion would be a modification of the creditor's rights impermissible under § 1322(b)(2). Its interpretation in *Nobelman* of the statutory language of § 1322(b)(2) with emphasis on the interests of home mortgage lenders validated the Ninth Circuit's concern for these rights.

However, through Section 301 of the Bankruptcy Reform Act of 1994, Congress added certain language to the Bankruptcy Code which reemphasized and strengthened its support of debtors' attempts to retain their homes through affordable, extended plan payments.

Section 1322(c) now[3] provides:

Not withstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankrkuptcy law; and (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for payment of the claim as modified pursuant to section 1325(a)(5).

These provisions create further exceptions to the § 1322(b)(2) prohibition against modification of the rights of secured creditors holding only liens against the debtor's residence. They are applicable to all cases filed after October 22, 1994.[4]

 This court must decide if the provisions of § 1322(c)(2) change the holding in *Seidel.* The legislative history of § 1322(c)(2) is puzzling and of little help to this court in deciding whether its provisions

---

**2.** It specifically rejected the contrary position taken by the Fifth Circuit in *Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984), distinguishing, as *Grubbs* did not, those cases in which the debt had matured prepetition under its own terms from those in which the balance was due as a result of the creditor's acceleration arising from a default. In *Grubbs* the debtor had defaulted prepetition on its payments and the creditor had accelerated the balance due on the note. The court took the opportunity to thoroughly examine the legislative history of §§ 1322(b)(2), (3), and (5) and reached the conclusion that the statutory language was not intended to preclude the debtor from either curing a prepetition acceleration into maturity of the

unpaid installments due on a home mortgage or from proposing that all past due or matured amounts so secured be paid during the life of the plan.

**3.** The language of present § 1322(c) is new. The language of old § 1322(c) has been renumbered as § 1322(d).

**4.** Bankruptcy Reform Act, Section 702. This section does not limit the effectiveness of the new provisions to *instruments* executed after October 22, 1994. Therefore there will be many security documents in effect on that date whose terms will be affected by the new Code provisions.

change the holding. H.R. 6020, a precursor to H.R. 5116, did not contain what now appears as § 1322(c)(2). It read simply: "(c) A default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b), notwithstanding applicable non-bankruptcy law, until such residence is sold under such lien and in accordance with applicable nonbankruptcy law." This language clearly is a precursor to what now appears as § 1322(c)(1). As noted in H.R.Rep. 102–996, the House Report accompanying the introduction of H.R. 6020, as well as H.R.Rep. 103–835 which accompanied H.R. 5116 and S.Rep. 103–168 which accompanied S. 506, the language of § 1322(c)(1) was intended to overrule the holdings of the Third Circuit Court of Appeals in *In re Roach*, 824 F.2d 1370 (3d Cir.1987) and *First National Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991). *Roach* held that the debtor's right to cure a default on a home mortgage was extinguished at the time a foreclosure judgment was entered. In *Perry* the court held that subsequent to a foreclosure judgment a debtor's attempt to repay the debt through the plan was an impermissible modification under § 1322(b)(2) of the mortgagee's right to immediate payment. Under § 1322(c)(1) as a matter of federal law Chapter 13 debtors now have the right to cure a default in their residential payments through the date of the foreclosure sale.

The language of § 1322(c)(2) first appeared in H.R. 5116. Addressing this subsection, H.R.Rep. 103–835 states: "The changes made by this section, in conjunction with those made in section 305 of this bill, [which addresses whether creditors should receive interest on interest on defaulted amounts pursuant to *Rake v. Wade* — U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)] would also overrule the result in *First National Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991) with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due." Strangely, there is nothing in the *Perry* opinion which even hints that by the original terms of the parties' contract the mortgage debt would have matured during the life of the proposed plan. Therefore this fact scenario could have played no role in the court's decision. The undisputed facts were that the debtor defaulted on the note and the creditor obtained a foreclosure judgment. The debtor filed a Chapter 13 petition before the foreclosure sale was held. Although the language of what is now § 1322(c)(2) appeared again in S. 506, interestingly, S.Rep. 103–168 accompanying that bill does not contain the quoted language which appeared in H.R.Rep. 103–835. Rather, the report simply reverts to language similar to that appearing in H.R.Rep. 102–996 where the provisions of § 1322(c)(2) did not appear: "This provision overturns cases such as *In re Roach*, 824 F.2d 1370 (3rd Cir.1987) and *First National Fidelity Corp. v. Perry*, 945 F.2d 61 (3rd Cir.1991) because *Roach* and *Perry* wrongfully elevated State law to eliminate Federal bankruptcy rights. This clarification is accomplished by explicitly recognizing such rights and the ability to cure a default pursuant to subsection 1322(b)(3) or 1322(b)(5) of the Bankruptcy Code." Therefore this court must conclude that there is no legislative history for what now appears as § 1322(c)(2).

Prior to the 1994 amendments, not only had the courts disagreed about the right to "cure", through plan provisions, a mortgage debt on a principal residence which came due prepetition by its own terms[5] but also have disagreed about the related question of the right to cure such debt which would have become due by its own terms during the life of the plan.[6] Section 1322(c)(2) clearly sanctions the latter. Further, although that subsection facially does not address those circumstances, two bankruptcy courts have recently ruled that it also sanctions the for-

---

**5.** *See,* e.g. *In re Eason,* 181 B.R. 127 (Bankr. N.D.Ala.1995); *In re Hart,* 184 B.R. 849 (Bankr. M.D.Fla.1995); *In re Baxter,* 155 B.R. 285 (Bankr.D.Mass.1993); *In re Dixon,* 151 B.R. 388 (Bankr.S.D.Miss.1993).

**6.** *In re Rubottom* 134 B.R. 641 (9th Cir. BAP 1991); *In re Sennhenn,* 80 B.R. 89 (Bankr. N.D.Ohio 1987); *In re Simpkins,* 16 B.R. 956 (Bankr.E.D.Tenn.1982).

mer.[7] For two reasons, this court also so holds. First, given the policy of supporting the debtor's attempts to retain his residence which pervades this new section there is no reasonable basis to assume that Congress intended that creditors whose mortgages may have matured by their own terms just prior to a Chapter 13 filing would not be prohibited by the filing from pursuing their nonbankruptcy rights while those creditors whose mortgages matured by their own terms just after the bankruptcy filing would be required to receive payments on the mortgage through the plan. Further, in a case decided prior to the 1994 amendments, in applying *Seidel* under the latter circumstances, the Ninth Circuit also decided that they were a distinction without a difference.[8] In *Harlan* the debt became due under the terms of the original note during the plan term with a balloon payment. The court clearly was concerned about lack of procedural due process to the creditor when the terms of the proposed plan eventually confirmed did not reveal any defect to which the affected creditor could have objected preconfirmation. However, the court states: "The Bankruptcy Code also provides, however, that a plan may not modify a claim secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). Pan American's promissory note was secured by Harlan's principal residence. Thus, the plan could not modify the terms of the promissory note, which required that Harlan pay $30,000 on August 10, 1983. As our circuit recently concluded, 'postponing payment of the [postconfirmation] debt beyond the time originally contemplated by the parties to the contract ... clearly amounts to a "modification"' barred by section 1322(b)(2). *In re Seidel*, 752 F.2d 1382, 1384 (9th Cir.1985) (holding that section 1322(b)(2) bars a home mortgagor from delaying payment of an already matured debt)." *Id.* at 840.

■ This court concludes that the *Seidel* holding has been overruled by the language of § 1322(c)(2). However, the debtor will be required to provide for full payment of the obligation during the life of the plan, which may not extend beyond five years[9].

■ Section 1322(c)(2) allows the debtor to provide payments through his plan on a debt matured prepetition only if the debtor meets the requirements of § 1325(a)(5). That section states:

"(a) Except as provided in subsection (b), the court shall confirm a plan if—

\*　\*　\*　\*　\*　\*

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; ..."

Courts generally concur that if the creditor has not accepted proposed plan terms and the debtor intends to retain the property, subsection (B) requires the debtor to include a discount factor in his payments to the creditor which reflects the market value for payments over time. Mr. Jones' plan does not provide for a discount factor. Therefore the court will deny confirmation of his proposed plan. It will grant Mr. Jones until November 10, 1995 to file an modified plan. The court will set a confirmation hearing for that plan. At that hearing Mr. Jones will have to demonstrate not only that the plan meets the requirements set forth in this opinion, but that the plan as proposed is feasible given Mr. Jones' disposable income.

An order consistent herewith shall be entered.

---

7. *In re Escue*, 184 B.R. 287 (Bankr.M.D.Tenn. 1995); *In re Chang*, 185 B.R. 50 (Bankr.N.D.Ill. 1995).

8. *In re Harlan*, 783 F.2d 839 (9th Cir.1986).

9. Section 1322(d).

## ORDER

This matter came before the court on the objection of Gerald and Marie Hough, secured creditors herein, to confirmation of the debtor's Chapter 13 plan. The court having entered its opinion in this matter and for the reasons set forth therein;

**IT IS HEREBY ORDERED** that confirmation of the debtor's Chapter 13 plan is denied;

**IT IS FURTHER ORDERED** that the debtor shall file an amended plan by November 10, 1995;