**In re Beverly A. HAMAN, a/k/a/ Beverly A. Baker, Debtor.**

**Bankruptcy No. 95–45818–399.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Dec. 5, 1995.

Nathan H. Goldberg, St. Louis, MO, for debtor.

Michael A. Campbell, Kathy A. Surratt, Clayton, MO.

John V. LaBarge, Jr., Chapter 13 Trustee, St. Louis, MO.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

The issue presented in this objection to confirmation is the time in which a Chapter 13 debtor has to cure the default on a note which matured pre-petition under § 1332(c)(1).

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgements pursuant to 28 U.S.C. § 157(b)(2)(L).

### STATEMENT OF FACTS

South Side National Bank (the "Bank") holds a note (the "First Note") from Beverly A. Hamen (the "Debtor") secured by a first deed of trust on Debtor's principal residence. This $18,310.34 note matured on February 23, 1995. On October 16, 1990, Debtor executed a second promissory note (the "Second Note") with Bank in the amount of $24,000 secured by a second deed of trust on the same property.

Debtor failed to satisfy her obligation under the First Note. Due to this default, the Bank notified Debtor that it would be exer-cising its right to foreclose on the property and scheduled foreclosure for September 27, 1995. Debtor's Chapter 13 filing on September 26, 1995 prohibited Bank from foreclosing. *See* 11 U.S.C. § 362(a)(3), (4), and (5)[1].

Debtor's Chapter 13 plan proposes to pay the full loan balance with 12.50% interest through the plan over the first forty five (45) months. *See* Debtor's Chapter 13 Plan at para.11.b. Bank filed an Emergency Motion for Relief from the Automatic Stay or in the Alternative for Dismissal (the "Motion"). In its Motion, Bank claims $18,310.34 is owed on the First Note. Bank also claims that principal of $20,781.69 is due on the Second Note. For each note, Bank claims interest, late charges and attorneys fees. *See* § 506(b).

On November 22, 1995, this Court held a confirmation hearing on Debtor's proposed plan. The Bank objected to plan confirmation citing the same reasons stated in its Motion. At the confirmation hearing, the Bank's Motion and Objection to Confirmation were consolidated and treated as one. This decision resolves both pleadings.

### DISCUSSION

The issue presented in this case is one of first impression. The parties have submitted no case authority in support of their positions, and the Court has found no guidance on the issue of the length of time within which a debtor may cure the arrearage on a note which matured by its terms before the filing of the Chapter 13 case.

At the confirmation hearing, Debtor argued that § 1322(c)(1) allowed curing of the balance of the First Note over the life of the plan. Bank agreed that § 1322(c)(1) permitted curing of the matured First Note, but it argued that the curing must be made within a "reasonable time" as provided in § 1322(b)(5) and not over the plan as permitted under § 1322(b)(3). In interpreting "reasonable time" in § 1322(b)(5), the Courts of this District have consistently held that, absent evidence to the contrary or written consent of the mortgagee, thirty (30) equal monthly payments over the first thirty (30)

1. The Bankruptcy Code is 11 U.S.C. §§ 101–1330. All future references are to Title 11 unless otherwise indicated.

months of the plan is a reasonable time in which to cure home mortgage arrearage. The Bank argues that allowing Debtor to cure a note, which has by its own terms matured, over a period longer than thirty months would unduly benefit the Debtor over debtors who must cure a default, a sum which is usually a small fraction of an unmatured note.

## I. The Applicability Section 1322(c)(1)

Through Section 301 of the Bankruptcy Reform Act of 1994, Congress reaffirmed its support of allowing Chapter 13 debtors to keep their homes through extended payments. Section 1322(c)(1) provides:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—(1) a default with respect to, or that gives rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law [2].

As the parties herein agree, Debtor has under § 1322(c)(1) the right to cure the default on the First Note which expires by its own terms prior to the filing of the bankruptcy petition. *See also In re Jaar*, 186 B.R. 148, 150 (Bankr.M.D.Fla.1995) (applying literal language of § 1322(c)(1)); *In re Sims*, 185 B.R. 853 866–7 (Bankr.N.D.Ala.1995). Prior to the enactment of § 1322(c), a debtor seeking to cure the default on a note secured by a principal residence was forced to cure that default under § 1322(b)(5) because it was the sole exception to § 1322(b)(2)'s prohibition against modifying the rights of claims "secured only by a security interest in real property that is the debtor's principal residence." With the enactment of § 1322(c)(1), Congress for the first time per-

mitted mortgagors of a "principal residence" secured debt an alternative to the § 1322(b)(2) modification prohibition. It permitted the § 1322(b)(3) cure provisions. Most importantly, Congress gave the debtor a choice when it codified the language "may be cured under paragraph (3) or (5)." The only issue remaining is the length of time in which a debtor should be allowed to cure the default.

## II. The Applicability of § 1322(b)(3) or (b)(5)

The Court concludes that Debtor's default on her note which matured pre-petition by its terms may be cured under § 1322(b)(3) which allows curing over the forty five (45) month period as provided in the Debtor's plan.

Section 1322(c)(1), namely "a default may be cured under paragraph (3) or (5)", makes it apparent that the debtor may cure under either paragraph. Section 1322(b)(3) allows the debtor to cure the debt without limitation to the "reasonable time" restriction of § 1322(b)(5). This result is mandated by the plain meaning of the statute, and it has support among commentators. *See* King, *Collier on Bankruptcy*, para. 1322.14A (15th ed. 1995) ("The statutory language [of § 1322(c)(1) ] also makes clear that debtors may cure home mortgage defaults under section 1322(b)(3), which may be used if the mortgage does not extend beyond the date the final payment under the plan is due, as required by section 1322(b)(5).")

In the typical case with a long-term mortgage (commonly 15 to 30 years), a debtor misses a number of payments, the bank accelerates the note, the debtor then files a Chapter 13 petition and § 1322(b)(5) allows the debtor to both cure the default and maintain payments on the note as it was originally

---

**2.** § 1322(c)(1) was added to overrule and to clarify the Third Circuit opinion in *Matter of Roach*, 824 F.2d 1370 (3d Cir.1987); *See* King, *Collier on Bankruptcy*, para. 1322.14A (15th ed. 1995). In *Roach*, the Third Circuit joined other circuits which held that a home mortgage default may be cured after contractual acceleration of the full mortgage debt. *See e.g. In re Glenn*, 760 F.2d 1428 (6th Cir.1985), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119. But in *Roach*, the debtor not only attempted to cure the mortgage after contractual acceleration but after a

foreclosure judgement. On this point, the court held that there "are no substantial federal interests that would justify ignoring property interests created by the judgement of a New Jersey court." 824 F.2d 1370 at 1377. The *Roach* court held that the right to cure a home mortgage under § 1322(b)(5) expired when the mortgagee obtained a foreclosure judgement. *Id.* at 1377. § 1322(c)(1) overruled this second point of *Roach* by expressly allowing the debtor the right to cure a default "until such residence is sold at a foreclosure sale."

written. In these cases, § 1322(b)(5) does not allow the debtor to extend the term of the original note; the date of maturity remains constant.

The Court concedes that the application of the statute may produce a seemingly inequitable result when compared with this Court's thirty month "reasonable time" yardstick. What troubles the Court is that § 1322(c)(1) permits a debtor who enters into a short-term (*e.g.* three to five years) note secured by a principal residence to extend that note after maturity for up to five *additional* years. By use of this device, the term of a note could be more than doubled.[3] The Court concludes, however, that Congress considered this consequence when it wrote § 1322(c)(1), and it is the job of this Court to interpret and apply the law, not to rewrite it.

### III. Other Courts View of § 1322(c)(1)

Section 1322(c)(1) has not received a great deal of judicial examination since its enactment. Two courts which have examined the provision have cited it merely for its literal proposition: that a debtor has the right to cure a default secured by a lien on the debtor's principal residence until the time of a foreclosure sale. *See In re Sims,* 185 B.R. 853 (Bankr.N.D.Ala.1995); *In re Jaar,* 186 B.R. 148 (Bankr.M.D.Fla. 1995). Another court cited the provision as "illustrative of Congress's intention to provide homeowners with continuing rights to cure defaults." *In re Bellinger,* 179 B.R. 220, 224 (Bankr.D.Idaho 1995).

Three other courts have examined the issue of curing the default on a note which matured pre-petition under § 1322(c). *In re Escue,* 184 B.R. 287 (Bankr.M.D.Tenn.1995); *In re Chang,* 185 B.R. 50 (Bankr.N.D.Ill. 1995); *In re Jones,* 188 B.R. 281 (Bankr. D.Or.1995). In *Escue* and in *Jones,* the bankruptcy courts utilized § 1322(c)(2) when determining whether a debtor may cure a pre-petition matured note through the Chapter 13 plan. In each case, the court conceded that § 1322(c)(2) did not literally apply to the facts before it,[4] yet each court determined the Congressional intent behind the enactment of § 1322(c)(2) and allowed the debtor to cure the default on a note which matured pre-petition.[5] Likewise in *Chang,* the court applied § 1322(c)(2) [6] and held that the debtor can pay such a mortgage balance over the life of the plan. 185 B.R. at 53.

This Court believes it is unnecessary to refer or to apply § 1322(c)(2) when dealing with a note which matured prior to filing, such as the instant case. Section 1322(c)(2) applies to cases "in which the last payment on the original payment schedule for ... is due before the date on which the final payment under the plan is due." Such is clearly not the case when the note matures pre-petition, and the Court therefore concludes that § 1322(c)(2) does not apply.

In accordance with the above, it is

ORDERED that Debtor's plan be confirmed.

---

3. Assume a case with a three year note with a balloon payment. After debtor defaults, he may cure the default on the balloon for up to five additional years by filing a sixty month Chapter 13 plan. The original three year note would then become an eight year obligation.

4. *See Escue,* 184 B.R. 287 at 292 ("Subsection (c)(2) appears to contemplate mortgages which mature post-petition ..."); *Jones,* 188 B.R. at 283 ("... [A]lthough [§ 1322(c)(2) ] facially does not address those circumstances [the right to cure a mortgage debt on a principal residence which came due post-petition]")

5. *See Escue,* 184 B.R. 287 at 292 ("... Congressional intent of [§ 1322(c)(2) ] when considered in light of the other provisions of Chapter 13,

and the overall objectives of bankruptcy, suggest Congress also intended for debtors to be able to cure defaults on short-term mortgages which mature or balloon prior to the petition date."); *Jones,* 188 B.R. at 283 ("First, given the policy of supporting the debtor's attempts to retain his residence which pervades this new section there is no reasonable basis to assume that Congress intended that creditors whose mortgages may have matured by their own terms just prior to ... filing would not be prohibited by the filing from pursuing their non-bankruptcy rights while those creditors whose mortgages expired by their own terms just after the bankruptcy filing would be required to receive payments on the mortgage through the plan.")

6. *See* 185 B.R. 50 at 52, fn. 1.