In re Ludwig NEPIL, Susan Nepil, Debtors.

Bankruptcy No. 96–22757 (NLW).

United States Bankruptcy Court, D. New Jersey.

March 18, 1997.

Dean G. Sutton by Dean G. Sutton, Sparta, N.J., for Debtor.

Federman & Phelan, P.C. by Danielle Cascarino, Stuard Minion, Westmont, NJ, for Mellon Mortgage Company.

*OPINION*

NOVALYN L. WINFIELD, Bankruptcy Judge.

This matter comes before the Court on Mellon Mortgage Company's ("Mellon") motion to vacate the automatic stay as to real property owned by Ludwig and Susan Nepil (collectively, "Debtors") pursuant to 11 U.S.C. § 362(d). The primary issue presented is whether, under §§ 1322(c)(2) and 1325(a)(5) of the Bankruptcy Code, the debtors may pay off a foreclosure judgment over the life of their plan.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the United States District Court of New Jersey dated July 23, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (I).

*STATEMENT OF FACTS*

Debtors purchased real property located at 55 Lake Stockholm Terrace, Hardyston, New Jersey on April 29, 1988. Mellon financed the purchase and duly recorded a purchase money mortgage.

Debtors filed their first petition for relief under Chapter 13 of the Bankruptcy Code on December 3, 1990. The plan was completed and this Court granted discharge on December 12, 1994. Apparently, Debtors again defaulted on the mortgage and in January, 1996, Mellon obtained a final judgment of foreclosure in New Jersey Superior Court. Subsequently, Debtors filed the instant Chapter 13 petition on April 3, 1996, staying enforcement of the judgment.

Mellon claims that it is owed the amount of $179,083.06. That figure consists of a principal balance of $120,398.94, plus interest in the amount of $40,744.40 and escrow advances totalling $17,939.72. Of the amount due it, Mellon claims $9223.30 in post-petition arrearages, calculated at $1451.00 per month plus a monthly late charge of $52.55.

Debtors submitted a Chapter 13 plan that proposes to pay the foreclosure judgment with applicable interest over a sixty month plan. Under their plan, Debtors propose to pay $1355.00 per month to the Standing

Chapter 13 Trustee. As of the date of this opinion, Debtors are current in their payments to the Trustee.

Mellon has moved to vacate the automatic stay on the ground that since they filed for Chapter 13 relief the Debtors have failed to make post-petition mortgage payments. Debtors respond that, because their plan proposes to pay the foreclosure judgment with interest over the life of the plan, Mellon is not entitled to any post-petition mortgage payments.

### CONCLUSIONS OF LAW

■ Notwithstanding the plan proposed by the Debtors, Mellon seeks relief from the automatic stay on the ground that it has not received any post-petition monthly mortgage payments from the Debtors. Though not explicitly stated in its motion papers, in essence Mellon contends that the only remedy available to the Debtors is to reinstate the terms of the mortgage, and cure the prepetition arrears through the Chapter 13 plan, while they pay the regular monthly mortgage payments outside of the plan. The Debtors submit that 11 U.S.C. § 1322(c)(2) provides them with the alternative relief of satisfying the foreclosure judgment by paying it in full through the plan.

■ Determination of the matter before the Court requires it to construe § 1322(c)(2). In construing any federal statute the court's "task is to ascertain congressional intent." *In re Roach,* 824 F.2d 1370, 1372 (3d Cir.1987). In furtherance of that goal, the first step must be analysis of the statutory language. *Heverly v. Commissioner of Internal Revenue,* 621 F.2d 1227, 1232 (3d Cir.1980). Section 1322(c)(2) provides in relevant part as follows:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

. . . .

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to 1325(a)(5) of this title.

Bearing in mind that the terms "claim" and "security interest" are broadly defined in §§ 101(5) and (51), Mellon's foreclosure judgment can be understood to constitute "a claim secured only by a security interest in real property that is the debtor's principal residence." It is less clear whether the foreclosure judgment can also be understood to constitute "the last payment on the original payment schedule," which is "due before the date on which the final payment under the plan is due."

The key phrase "original payment schedule" is not defined in the Bankruptcy Code and the phrase encompasses substantially different meanings depending on whether it is read broadly or narrowly. On the one hand, the phrase can be understood merely to refer to the amortization schedule under which the note is satisfied. On the other hand, the phrase can be read to reach the entirety of the mortgagee's right to payment, including the fully accelerated payment reflected in the foreclosure judgment.

[3] Since the language of the statute is not clear and plain the Court must look elsewhere to determine congressional intent and the best construction of § 1322(c)(2). Indeed, it is readily accepted that to determine the meaning of a statute, the court must look not only to express statutory language but also "to the design of the statute as a whole and its object and policy." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1155 (3rd Cir.1991) (quoting *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001–02, 108 L.Ed.2d 132 (1990)); *see also, F.T.C. v. University Health, Inc.,* 938 F.2d 1206, 1216 (11th Cir.1991) (to interpret statutory language, it is best to refer to the overall statutory scheme). Thus, the Court will look to the statutory framework, the policies underlying the statute, and the legislative history.

■ The appropriate stepping-off point in statutory construction is the specific legislative history to the statute being construed. However, in reaching its decision the Court

has placed little weight upon the legislative history because like the court in *In re Jones*, this Court finds the legislative history for § 1322(c)(2) to be puzzling. 188 B.R. 281, 282 (Bankr.D.Ore.1995). In particular, the portion of the House Report which purports to explain the subsection confuses rather than clarifies the statutory purpose by its reference to the *Perry* case. The House Report states: "The changes made by this section, in conjunction with those made by section 305 of this bill, would also overrule the result in *First National Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991) with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due."

The reference to *Perry* is puzzling because the issue in that case was whether the debtor could force a residential lender with a foreclosure judgment to accept payment of that judgment over the life of a three to five year Chapter 13 plan. The circuit had concluded in its earlier *Roach* decision that, pursuant to the merger doctrine, under New Jersey law a mortgage merged into the foreclosure judgment so that no mortgage contract existed which could be decelerated in Chapter 13. *Roach*, 824 F.2d at 1377–78. Therefore, the question of mortgage terms was moot.

It is possible to reconcile the House Report's reference to *Perry* to the statutory language if we bear in mind the divergent case authority on the matter of the debtor's right to propose a plan that provided for payment of a matured or maturing mortgage debt. The leading case which concluded that such a plan could not be confirmed was *In re Seidel*, 752 F.2d 1382 (9th Cir.1985). In *Seidel*, the court held that by postponing payment of his home mortgage debt beyond the time originally provided in the mortgage note, the debtor had proposed a modification of the claim which was not permitted by § 1322(b)(2). 752 F.2d 1382, 1384. The court in *Perry* cited *Seidel* with approval in reaching its decision that a foreclosure judgment could not be paid through a Chapter 13 plan. 945 F.2d 61, 65. The thrust of both cases is that deferral of a home lender's right to immediate payment is a modification in violation of § 1322(b)(2).

Section 1322(c)(2) plainly overrules that result. *See In re Chang*, 185 B.R. 50, 53 (Bankr.N.D.Ill.1995). Given the haste with which the 1994 Amendments were passed it is likely that the reference to *Perry* is simply incomplete, and the intent was to address both *Perry* and *Seidel*. However, the Court is well aware of the speculative and conjectural nature of its reasoning. It is one thing to use legislative history as a tool to interpret statutory language. It is quite another to indulge in the risky business of interpreting legislative history itself. The Court chooses to refrain from an attempt to read the mind of the drafter of the House Report. Thus, the Court rests its construction of § 1322(b)(2) upon the policies of Chapter 13 and § 1322(c), and the cases interpreting the section.

In general, Chapter 13 of the Bankruptcy Code was intended to give consumer debtors greater relief and flexibility in fashioning payment plans than was previously afforded to them under Chapter XIII of the Bankruptcy Act. H.R. Report No. 595, 95th Cong. 1st Sess. 118 (1977). The greater utility and flexibility of Chapter 13 was specifically intended to encourage debtors to attempt repayment of creditors under Chapter 13 rather than to seek liquidation under Chapter 7. *Id.* at 117–18. Further, "A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13. Under prior law, a Chapter XIII plan could not provide protection to the debtor's home." *In re Hoggle*, 12 F.3d 1008, 1010 (11th Cir.1994).

This notion that Congress intended to afford a consumer debtor expanded access to and use of Chapter 13 informs many of the decisions which have interpreted a debtor's right to cure defaults under §§ 1322(b)(3) and (b)(5). *See In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *Grubbs v. Houston First American Sav. Ass'n.*, 730 F.2d 236 (5th Cir.1984) (en banc); *In re Williams*, 109 B.R. 36 (Bankr.E.D.N.Y.1989). Of course, Chapter 13 was not intended solely to benefit debtors and in construing § 1322(b)(2) in particular, courts recognized that Congress

clarified the rights of secured creditors and particularly evidenced concern for the home lender. *See In re Roach*, 824 F.2d 1370 (3d Cir.1987); *First National Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991); *In re Seidel*, 752 F.2d 1382 (9th Cir.1985). The troublesome issue that divided courts was determining the point at which the debtor's efforts to cure resulted in an impermissible modification of the rights of residential mortgages.

The amendments to the Bankruptcy Code contained in The Bankruptcy Reform Act of 1994 ("1994 Amendments") were intended to address in part the limits of the right to cure, and appear to have been intended to generally make Chapter 13 more beneficial for consumer debtors. For example, the debt ceilings applicable to Chapter 13 eligibility were raised, and the effect of *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) was overruled by addition of subsection (e) to § 1322. Additionally, of particular importance to the matter at hand, subsection (c) was added to § 1322 to permit a debtor to cure a default on a home mortgage up to the time that the home is sold at foreclosure sale, and to permit the modification of home mortgages that matured before the completion of the Chapter 13 plan.

To fully appreciate the changes effected by the 1994 Amendments it is necessary to consider the state of the law at the time of enactment. A clear split of authority existed on the issue of whether the debtor's right to cure a default terminated upon entry of the foreclosure judgment or continued until foreclosure sale. As stated in The House Report that accompanied the 1994 Amendments Congress determined that the *Roach* decision was in conflict with the fresh start policy of the Bankruptcy Code and that the debtor's rights in Chapter 13 should be safeguarded by permitting the debtor to cure until completion of the foreclosure sale. H.R.Rep. No. 835, 103d Cong.2d Sess. 52 (1994).

Equally divergent authority existed with regard to mortgages that were either fully matured prior to case commencement or that matured during the life of the Chapter 13 plan. Courts split as to whether a plan that extended the maturity date of a mortgage secured by the debtor's personal residence constituted an impermissible modification under § 1322(b)(2). *See, e.g., Seidel*, 752 F.2d at 1382; *In re Eason*, 181 B.R. 127 (Bankr. N.D.Ala.1995) (plan which pays a fully matured mortgage over five years does not impermissibly modify secured creditors rights); *In re Williams*, 109 B.R. 36 (Bankr.E.D.N.Y. 1989) (whether a debt comes due by acceleration or its own terms, is immaterial, a debtor may still cure default through plan); *In re Fuentes*, 167 B.R. 901 (Bankr.E.D.Mo.1994) (an accelerated mortgage note may be cured but a mortgage that matured by its own terms may not be cured as no default exists); *In re La Brada*, 132 B.R. 512 (Bankr. E.D.N.Y.1991) (plan that provides for payment of already matured balloon mortgage is an impermissible modification).

Pursuant to § 1322(c)(2) it appears that Congress resolved the divergent decisions regarding maturing obligations by permitting debtors to cure these obligations by paying the remaining part of the debt over the life of a Chapter 13 plan. The cases that have construed § 1322(c)(2) uniformly emphasize that the purpose of the statute is directed to permitting debtors to retain their homes.

In the case of *In re Chang*, 185 B.R. 50 (Bankr.N.D.Ill.1995) the court authorized the debtors to pay the outstanding mortgage loan balance over the life of their Chapter 13 plan. The balloon payment had come due prior to commencement of the Chapter 13 case and the lender had obtained a foreclosure judgment. The court appears to have relied on subsection (c)(1) as well as (c)(2). It found that § 1322(c) permitted cure under § 1322(b)(3) notwithstanding § 1322(b)(2) and that it implicitly overruled *Seidel*. *Id*. at 53. Further, applying § 1322(c)(2) it held that although the debtor could not extend the mortgage term indefinitely, it could pay the balance in a plan that could run for five years. *Id*. It specifically observed that "[t]his extension enables debtors to retain their homes for a few additional years and may enable them to sell their homes at a more favorable economic time, obtain replacement financing, or hope that their economic circumstances change for the better so that they may pay off the mortgage debt." *Id*.

The court in *In re Jones*, 188 B.R. 281, 283–84 (Bankr.D.Ore.1995) agreed with the *Chang* decision that a balloon mortgage that matured pre-petition could be satisfied through a plan. In arriving at its decision the court made observations that are pertinent to the matter at hand. The court noted that prior to the 1994 Amendments courts disagreed not only as to whether debtors could cure a mortgage that had fully matured prepetition, but also as to whether debtors could cure mortgages that matured during the life of the plan. *Id.* at 283. It further observed that the language of § 1322(c)(2) plainly addresses the latter situation but is silent as to mortgages that fully mature prepetition. The court did not find the statutory silence to be an impediment to its conclusion that § 1322(c)(2) should be read to encompass matured prepetition mortgage obligations, because it found that the policy of aiding debtors in their efforts to retain their homes pervades the amended section. *Id.* at 284. Furthermore, in light of that policy the court found no reasonable basis to assume that Congress intended that creditors whose mortgages matured by their own terms prepetition would not be subject to Chapter 13 provisions while creditors whose mortgages matured by their own terms just after the bankruptcy filing could have payment of their obligation stretched out over the life of the plan. In essence, the court found no meaningful distinction between such mortgage obligations. *Id.*

In fact, to date, the courts that have addressed the issue of whether § 1322(c)(2) applies to matured or ballooned mortgage obligations have all answered in the affirmative. *See also, In re Escue*, 184 B.R. 287, 293 (Bankr.M.D.Tenn.1995); *In re Sarkese*, 189 B.R. 531, 534 (Bankr.M.D.Fla.1995); *In re Lobue*, 189 B.R. 216, 218 (Bankr.S.D.Fla. 1995).

Applying the reasoning of *Jones* and *Chang*, this Court finds that the language of § 1322(c)(2) is sufficiently broad so as to apply with equal force and result to a foreclosure judgment. As a practical matter this Court can discern no difference among a fully matured mortgage debt, a mortgage on which the balloon payment is due, and a foreclosure judgment. In each circumstance the holder of the obligation is entitled to immediate full payment. Given the overall objectives of Chapter 13, the fact that the 1994 Amendments express a particular concern that debtors be afforded opportunity to save their homes, and that no practical difference exists between the rights of holders of matured mortgage obligations and holders of foreclosure judgments, the Court construes the language of § 1322(c)(2) to include foreclosure judgments.

The Court's decision should not be construed as providing home mortgage lenders with foreclosure judgments anything less than the full amount of their judgment claim. A confirmable Chapter 13 plan must still pay judgment holders their claim over the life of the plan. Unless this requirement is met, the plan is patently unconfirmable.

### CONCLUSION

For the reasons set forth at length above, the Court determines that the Debtors may pay the foreclosure judgment through a plan, so long as the treatment afforded Mellon's claim comports with § 1325(a)(5). Accordingly, Mellon's motion for relief from the stay is denied.