In re Thomas E. REEVES and Karen L. Reeves, Debtors.

Bankruptcy No. 97–73884.

United States Bankruptcy Court, C.D. Illinois.

June 12, 1998.

John S. Narmont, Springfield, IL, for Debtors.

Rosalie H. Lowery, Springfield, IL, for Creditor.

John H. Germeraad, Petersburg, IL, Chapter 13 Trustee.

## OPINION

BASIL H. COUTRAKON, Bankruptcy Judge.

The issue before the Court is whether 11 U.S.C. § 1322(c)(2) permits a Chapter 13 debtor to bifurcate an undersecured claim secured by a mortgage on a principal residence which has come due prior to the filing of the bankruptcy petition into secured and unsecured components.

On September 14, 1995, Debtors executed a step-up rate mortgage note with balloon payment and corresponding mortgage in the sum of $91,400 relating to the residential property located at Lot 8 Allen Drive, Athens, Illinois. By its terms, the note became due and payable in full on September 14, 1997. Debtors filed their joint petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on October 27, 1997. Debtors proposed an Amended Chapter 13 Plan which provided for 60 monthly payments of $850. From the payments, the plan proposed that the Chapter 13 Trustee pay Claimant the sum of $702.79 per month, culminating with a balloon payment five years following the date of confirmation, at which time Debtors would find alternative financing to pay off the balance of the mortgage debt. On November 21, 1997, Claimant filed a proof of claim in the amount of $118,157.30. Claimant characterized the claim as secured in the amount of $117,000 and unsecured in the amount of $1,157.30. On January 9, 1998, the Trustee and Debtors' counsel objected to the claim to the extent it exceeded $91,400. On January 27, 1998, the Court entered an Order confirming the Chapter 13 plan which provided, *inter alia*, that any holder of an allowed secured claim who has (i) not accepted the plan, or (ii) to whom Debtors have not surrendered the property securing the claim, shall retain the lien securing such claim. On April 24, 1998, Claimant filed a Motion asking the Court to find its claim fully secured and non-modifiable pursuant to § 1322(b)(2) and § 1325(a)(5) of the Bankruptcy Code. Debtors argue that their valuation is correct and that modification of Claimant's claim is authorized by § 1322(c)(2) because final payment on Claim-

ant's mortgage came due prior to the completion of the Debtors' proposed five-year plan.

Section 1325 provides in part as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim(.)

. . . .

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property. to be distributed under the plan on account of such claim is not less than the amount of such claim(.)

. . . .

Section 1322(b)(2) provides that, subject to the other subsections of § 1322, a Chapter 13 plan may:

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . . (.)

Section 1322(c)(2) provides as follows:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Claimant does not deny that its mortgage falls within the scope of § 1322(c)(2) in that its mortgage came due prior to the filing of the petition in bankruptcy. *Accord In re Chang,* 185 B.R. 50 (Bankr.N.D.Ill.1995); *In re Jones,* 188 B.R. 281 (Bankr.D.Or.1995); *In re Sarkese,* 189 B.R. 531 (Bankr.M.D.Fla. 1995). Claimant also acknowledges that § 1322(c)(2) allows for modification of the Claimant's rights with respect to allowing modification of the date of the final payment to coincide with the final payment under the Chapter 13 plan. However, Claimant disputes that § 1322(c)(2) permits Debtors to bifurcate its claim.

Under § 506(a) of the Bankruptcy Code, bifurcation of a claim into secured and unsecured components is generally permitted:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

*See also U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 238–39, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989), on remand, 872 F.2d 778 (6th Cir.1989) ("Section 506 . . . governs the definition and treatment of secured claims . . . [and] provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.").

However, in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the U.S. Supreme Court held that § 506(a) did not apply to claims that were secured only by an interest in the debtor's principal residence. The Supreme Court analyzed § 1322(b)(2) and concluded that "to give effect of § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan . . . would require a modification of the rights of the holder of the security interest." *Id.* at 332, 113 S.Ct. at 2111. According to the Court, "[s]ection 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence." *Id.*

During the year after the *Nobelman* decision was rendered, Congress passed the Bankruptcy Reform Act of 1994, which became effective on October 22, 1994, and of which § 1322(c)(2) was a part. The question before this Court is whether the enactment of § 1322(c)(2) created an exception to the rule set forth in *Nobelman*. Several courts have addressed this issue, reaching opposing conclusions.

In *In re Witt*, 113 F.3d 508 (4th Cir.1997), the U.S. Court of Appeals for the Fourth Circuit held that § 1322(c)(2) does not permit the bifurcation of an undersecured loan into secured and unsecured components where the only security for the loan is a lien on the debtor's principal residence.

In *Witt*, the court concluded that, where § 1322(c)(2) states that "the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title", the phrase "as modified pursuant to section 1325(a)(5)" applies to the word "payment" rather than to the word "claim". Accordingly, the court found that § 1322(c)(2) allows debtors to modify only the amount or scheduling of the individual payments on the claim. The amount of the underlying claim itself could not be modified. 113 F.3d at 513–14.

The *Witt* court acknowledged that the language of § 1322(c)(2), particularly the phrase "payment of the claim as modified," was ambiguous and that the court could not determine conclusively from the statute's text whether the words "as modified" should apply to the word "payment" or the word "claim". The court further acknowledged that, under the "rule of the last antecedent," a phrase should be read to modify its immediate antecedent. This would mean, in this case, that "as modified" would modify the word "claim." *Witt*, 113 F.3d at 511, *citing Nobelman*, 508 U.S. at 330, 113 S.Ct. at 2111. Although the court found that interpretation "quite sensible as a matter of grammar", it ultimately reached a contrary conclusion.

The *Witt* court was influenced by the fact that, in the final clause of § 1322(c)(2) ("the plan may provide for the payment of the claim as modified"), the word "payment" becomes superfluous if the debtor's interpretation is adopted. If Congress had intended to enact the debtor's position, the court reasoned, there was no reason to refer to the "payment" of the claim; rather, § 1322(c)(2) could have ended by saying "the plan may provide for the claim to be modified." 113 F.3d at 511–12.

The court in *Witt* was also influenced by certain statements found in House Report 835, H.R.Rep. No. 103–835 (1994) *reprinted in* 1994 U.S.C.C.A.N. 3340, which set forth the purpose of the Bankruptcy Reform Act of 1994 and analyzed each section. The Report discusses the impact of § 1322(c)(2) by stating that its enactment would overrule the result in *First Fidelity Corp. v. Perry*, 945 F.2d 61 (3d Cir.1991), with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. In *Perry*, the Third Circuit held that, subsequent to a foreclosure judgment, a Chapter 13 debtor cannot provide for a mortgage debt by paying the full amount of the allowed secured claim during the course of the Chapter 13 plan. According to the *Witt* court, this statement makes clear Congress' intent in enacting § 1322(c)(2). The court in *Witt* also noted that the House Report made no mention of *Nobelman* or of any intention to overrule that decision. *Witt*, 113 F.3d at 513. In conclusion, the court found it ill-advised to give such a drastic interpretation to § 1322(c)(2) without congressional support. *Id.*

Nine months before the Fourth Circuit decided *Witt*, Judge Parsons of the Bankruptcy Court for the Eastern District of Tennessee addressed the same issue in *In re Young*, 199 B.R. 643 (Bankr.E.D.Tenn.1996). In a thoughtful and highly analytical opinion, Judge Parsons reached the opposite conclusion.

The *Young* court found that there is no statutory basis for treating undersecured home mortgages which fall due before the end of the plan differently from any other undersecured creditor now that the protection for these types of debts has been eliminated by § 1322(c)(2).

In addressing the legislative history of § 1322(c)(2), the court in *Young* expressed

its agreement with the conclusion reached by the court in *In re Jones, supra,* which set forth a detailed analysis of the legislative history of § 1322(c)(2). 188 B.R. at 282–84. The *Jones* court noted that the reference in the House Report to the overruling of *Perry, supra,* was perplexing because *Perry* involved a prepetition default and foreclosure judgment with the debtors filing bankruptcy to stop the foreclosure sale. There is nothing in the *Perry* opinion to indicate that the mortgage debt at issue would have matured under the original terms of the contract during the life of the debtors' proposed plan. *Jones* 188 B.R. at 283. Additionally, none of the facts in *Perry* elucidate the bifurcation issue because the loan in *Perry* was fully secured and the debtors sought only to pay the mortgage in full under the proposed Chapter 13 plan. The lack of factual similarity between *Perry* and § 1322(c)(2) led the *Jones* court to conclude that there is no legislative history for § 1322(c)(2). The *Young* court found that, at a minimum, the legislative history was inconclusive. 199 B.R. at 652–53. As such, *Young* concluded that:

> (*l* )iteral application of § 1322(c)(2) in a manner proposed by the debtors did not produce a result that was 'demonstrably at odds with the intention of the drafters.' Instead, it only produces a result for which there is no expressed intent in the statute's legislative history. Because § 1322(c)(2)'s plain meaning does not conflict with any stated intention of Congress or run counter to any other section of the Bankruptcy Code, the statute must be applied as written.

199 B.R. at 653 (citations omitted).

In *In re Mattson,* 210 B.R. 157 (Bankr. D.Minn.1997), the court reached the same result as that reached by the court in *Young.* The *Mattson* court rejected *Witt* by stating that the "opinion is flawed, however, in that it attempts to divine the will of Congress and then combine the results of its understanding with a misapplication of the Supreme Court's holding in *Nobelman* to reach an erroneous result. The correct result is easily reached by a straightforward reading of the statute, which is consistent with both the scant legislative history of § 1322(c)(2) and the opinion in *Nobelman.*" *Mattson,* 210 B.R. at 158–59. The *Mattson* court called the *Witt* court's reading of § 1322(c)(2) "unnatural and [violative of] rules of both common sense and grammar, not to mention the last antecedent rule of statutory construction." *Mattson,* 210 B.R. at 160. Finally, the *Mattson* court endorses *Young,* calling it "(t)he definitive opinion on § 1322(c)(2)". *Mattson,* 210 B.R. at 159.

Most recently, the Sixth Circuit Bankruptcy Appellate Panel in *In re Eubanks,* 219 B.R. 468 (6th Cir. BAP 1998) disagreed with *Witt* and ruled in accord with *Mattson* and *Young* (which it called "well-reasoned analysis") in finding that the § 1322(c)(2) exception to § 1322(b)(2) was not limited to the curing of defaults. The court looked at the plain meaning of the statute and found that the creditor's interpretation of § 1322(c)(2) "tortures the words used by Congress, makes a mess of several other well-settled provisions of the Code and trumps the plain language of the statute with the ambiguous silence of legislative history." 219 B.R. at 471.

The *Eubanks* court found support for its reading of § 1322(c)(2) in the legislative history. It also found that *Nobelman* was not overruled by § 1322(c)(2); rather, § 1322(c)(2) merely changed the class of mortgages which are protected from modification by § 1322(b)(2). 219 B.R. at 477.

This being the first opportunity this Court has had to address this issue, the Court, like the court in *Witt,* has some trepidation about assigning such a drastic interpretation to § 1322(c)(2) as the courts in *Young, Mattson,* and *Eubanks* have done. It is not at all clear to this Court what Congress intended to accomplish by enacting § 1322(c)(2). The legislative history pertaining to the enactment of § 1322(c)(2) is largely absent and, where present, is ambiguous and sometimes internally inconsistent. It is remarkable, for example, that there is no mention anywhere in the legislative history of § 1322(c)(2) of the *Nobelman* case. Even if Congress had intended the interpretation of § 1322(c)(2) set forth in *Witt,* one would have expected some reference to the definitive case analyzing § 1322(b)(2), the provision to which

§ 1322(c) was to provide substantial exceptions. For this reason and many others, the Court agrees with the court in *Young* that the legislative history for § 1322(c)(2) is inconclusive.

That being said, this Court has less trouble than the court in *Witt* in finding that the language of the statute itself, particularly the phrase "payment of the claim as modified," has a plain meaning which, on its face, seems to allow for the bifurcation permitted in *Young, Mattson,* and *Eubanks.* This Court agrees with *Witt* that the phrasing utilized by Congress could have been more precise; however, where the statute's language is plain, the inquiry should end, as the role of the courts is to enforce a statutory provision according to its terms. *U.S. v. Ron Pair Enterprises, Inc.* 489 U.S. at 241, 109 S.Ct. at 1030 (1989) (citations omitted).

For these reasons, the Court finds in accordance with the courts in *Young, Mattson,* and *Eubanks* that § 1322(c)(2) permits the bifurcation of an undersecured mortgage on a Chapter 13 debtor's principal residence when the last payment on the original payment schedule is due before the final payment under the plan is due.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in an Opinion entered this day,

IT IS THEREFORE ORDERED that the Motion of Plymouth Capital Company, Inc., n/k/a DeGeorge Capital Corp., to Consider the Amount of its Claim Secured and Non-Modifiable be and is hereby denied.

IT IS FURTHER ORDERED THAT the Motion of Plymouth Capital Company, Inc. to Compel Trustee to Conform Payment under Chapter 13 Plan with Creditor's Proof of Claim be and is hereby denied.

IT IS FURTHER ORDERED THAT Plymouth Capital Company, Inc., n/k/a De-George Capital Corp., file an amended claim

in accordance with the Court's ruling within 14 days of the date of this Order.